2024–1661

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

ZIP TOP INC.,
*Plaintiff-Appellant,*

v.

SC JOHNSON & SON INCORPORATED,
*Defendant-Appellee.*

---

Appeal from the United States District Court for the Northern District of Illinois
in Case No. 1:22-cv-05028, Judge Jorge L. Alonso

---

## APPELLEE'S RESPONSE BRIEF

---

Christopher G. Hanewicz
Andrew T. Dufresne
Autumn N. Nero
Rodger Carreyn
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460
CHanewicz@perkinscoie.com
ADufresne@perkinscoie.com
ANero@perkinscoie.com
RCarreyn@perkinscoie.com

*Counsel for SC Johnson & Son, Incorporated*

August 7, 2024

## Claim 1 of the '890 Patent

1. A silicone container making process, the process comprising:

placing a first mold in proximity with at least a second mold to define a mold cavity of sufficient size and shape to mold a unitary whole container;

mixing a base-forming material and a catalyst to make uncured silicone;

putting the uncured silicone into the mold cavity;

curing the uncured silicone by applying heat and pressure to the uncured silicone in the mold cavity until the silicone cures to form the unitary whole container comprising:

a container portion defining a mouth, wherein the mouth has at least one flexible spout and first and second interior sides opposite each other;

a zipper portion comprising:

a female zipper member extending from the first interior side of the mouth, the female zipper member comprising:

a female middle section comprising two middle flanges defining a middle channel between the two middle flanges, and

at least one female end section proximate the at least one flexible spout and comprising two end flanges extending from the first interior side of the mouth to define an end channel between the two end flanges,

wherein the two middle flanges extend farther from the first interior side of the mouth than the two end flanges;

a male zipper member extending from the second interior side of the mouth, wherein the female and male zipper members are positioned opposite each other so as to be engageable when closing the mouth, the male zipper member comprising:

a male middle section comprising a middle trunk; and

at least one male end section proximate the at least one flexible spout comprising an end trunk,

wherein the middle trunk extends farther from the second interior side of the mouth than the end trunk;

opening the first mold relative to the at least second mold; and

removing the container from the mold cavity.

Appx52.

## Certificate of Interest

I certify that the information below is complete to the best of my knowledge.

Date: August 7, 2024

Signature: /s/Andrew T. Dufresne

Name: Andrew T. Dufresne

| 1. Represented Entity | 2. Real Party in Interest | 3. Parent Corporations and 10% Stockholders |
|---|---|---|
| SC Johnson & Son Incorporated | none | none |

| 4. Other Legal Representatives | |
|---|---|
| Perkins Coie LLP: | Kaitlin Dryden<br>Kathleen A. Stetsko<br>Mark T. Smith*<br>*no longer with Perkins Coie |

| 5. Related Cases |
|---|
| none |

| 6. Organizational Victims and Bankruptcy Cases |
|---|
| none |

# TABLE OF CONTENTS


Claim 1 of the '890 Patent ........ inside front cover

Certificate of Interest ........ i

Table of Authorities ........ iv

Table of Abbreviations and Conventions ........ vii

Statement of Related Cases ........ viii

Introduction ........ 1

Jurisdiction and Motion to Dismiss ........ 2

Issues Presented ........ 5

Statement of the Case ........ 6

- I. Background ........ 6
  - A. The parties ........ 6
  - B. The '890 patent ........ 8
- II. District court proceedings ........ 11
  - A. The accused Ziploc Endurables products ........ 11
  - B. Zip Top's infringement contentions ........ 14
  - C. Summary judgment proceedings ........ 14
  - D. The district court's summary judgment order ........ 18

Summary of Argument ........ 20

Standards of Review ........ 23

Argument ........ 24

- I. The district court correctly construed "spout" according to the agreed plain meaning and consistent with the intrinsic record ........ 24

A. The district court conducted the right analysis and did not introduce a negative limitation ........ 24

B. Zip Top's counterarguments are meritless ........ 30

1. Use of integral molding does not preclude the resulting "unitary container" from having distinct features ........ 30

2. Zip Top's argument regarding a spout extending above and below the zipper members is both new and irrelevant ........ 32

3. Zip Top's unilateral annotations are not evidence and cannot rewrite the patent ........ 34

4. "Comprising" does not affect the construction of "spout" ........ 36

II. The district court did not disregard Zip Top's alleged evidence of a spout ........ 38

A. Zip Top forfeited infringement theories based on "spouts" other than the purported "cross over" spout ........ 38

B. The district court did not disregard evidence ........ 40

C. Evidence of a spout above and below the zipper members is not "undisputed" ........ 44

III. Zip Top is not entitled to summary judgment of infringement ........ 45

A. Zip Top's cross-motion was inadequate ........ 45

B. Additional evidence supports noninfringement ........ 45

C. Zip Top distorts SCJ's arguments before the district court ........ 47

D. Zip Top failed to show the accused products met the "mixing/molding" limitation ........ 48

Conclusion ........ 49

Certificate of Compliance

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Am. Fed'n Gov't Emps., Loc. 1367 v. Dep't of the Air Force*,
61 F.4th 952 (Fed. Cir. 2023) ........................................ 4

*Austin v. Walgreen Co.*,
885 F.3d 1085 (7th Cir. 2018) ........................................ 24

*Becton, Dickinson & Co. v. Tyco Healthcare Grp.*,
616 F.3d 1249 (Fed. Cir. 2010) ........................................ 31, 32

*Canadian Lumber Trade All. v. United States*,
517 F.3d 1319 (Fed. Cir. 2008) ........................................ 2, 3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................ 23

*Comcast Cable Commnc'ns, LLC v. Promptu Sys. Corp.*,
838 F. App'x 551 (Fed. Cir. 2021) ........................................ 32

*Dippin' Dots, Inc. v. Mosey*,
476 F.3d 1337 (Fed. Cir. 2007) ........................................ 38

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*,
778 F.3d 593 (7th Cir. 2015) ........................................ 46, 49

*In re Zip Top Inc.*,
Case No. 23-10832-smr (Bankr. W.D. Tex.) ........................................ 7

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
22 F.4th 1369 (Fed. Cir. 2022) ........................................ 31, 34

*L & W, Inc. v. Shertech, Inc.*,
471 F.3d 1311 (Fed. Cir. 2006) ........................................ 45

*Landmark Land Co. v. FDIC*,
256 F.3d 1365 (Fed. Cir. 2001) ........................................ 2

*Lans v. Digital Equip. Corp.*,
252 F.3d 1320 (Fed. Cir. 2001) .................................................................. 23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ......................................................................................... 2

*Mars, Inc. v. Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008) .................................................................... 3

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005) .................................................................. 47

*Moore U.S.A., Inc. v. Standard Reg. Co.*,
229 F.3d 1091 (Fed. Cir. 2000) .................................................................. 45

*Narducci v. Moore*,
572 F.3d 313 (7th Cir. 2009) ........................................................................ 49

*Nike, Inc. v. Adidas AG*,
812 F.3d 1326 (Fed. Cir. 2016) ............................................................ 29, 30

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
845 F. App'x 943 (Fed. Cir. 2021) ............................................................... 4

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .................................................................. 25

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004) ...................................................................37

*Sage Prod., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ................................................................... 40

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015) ...................................................................................... 23

*Treehouse Avatar LLC v. Valve Corp.*,
54 F.4th 709 (Fed. Cir. 2022) ....................................................................... 23

*Uniloc USA, Inc. v. Apple Inc.*,
784 F. App'x 763 (Fed. Cir. 2019) ................................................................ 2

*WiNet Labs LLC v. Motorola Mobility LLC*,
855 F. App'x 672 (Fed. Cir. 2021) .................... 3

**Other Authorities**

Fed. Cir. R. 27(f) .................... 2

Fed. R. App. P. 3(c)(1)(A) .................... 3

Fed. R. Civ. P. 25(c)(1)(B) .................... 12

N.D. Ill. L. R. 56.1 .................... 17

## Table of Abbreviations and Conventions

| | |
|---|---|
| Appx__ | joint appendix page __ |
| BlueBr__ | Zip Top's opening brief at page __ |
| SCJ | appellee SC Johnson & Son Incorporated |
| Zip Top | appellant Zip Top, Inc. |
| (*xx*:*yy*-*zz*) | column *xx*, lines *yy*-*zz* |
| '890 patent | U.S. Patent No. 11,383,890 |

## Statement of Related Cases

No other appeal involving the same proceeding was previously before this Court or any other appellate court. Counsel for SCJ are not aware of any other case pending in this or any other tribunal that will directly affect or be directly affected by this Court's decision in the pending case.

## Introduction

Zip Top's primary argument depends on disputing the plain-meaning construction for a "spout" that it repeatedly endorsed and expressly accepted before the district court. Zip Top now asks this Court to deviate from that undisputed plain meaning by tacking on additional statements that would contradict the surrounding claim language and the specification. Faced with its own prior admissions and compelling intrinsic evidence, Zip Top is left to rely on its own revisionist annotations to the figures of the '890 patent. But those colorful overlays are not evidence, and Zip Top offers little else to rebut the district court's well-reasoned construction of the asserted claims.

Under that construction, Zip Top's only theory for identifying a "spout" in the accused products was dead on arrival. Hoping to sidestep summary judgment, Zip Top introduces a new infringement theory and accuses the district court of ignoring evidence, but the record readily refutes those efforts. And Zip Top's request for summary judgment in its own favor has no basis in reality, given the comprehensive evidence SCJ submitted distinguishing the accused products from multiple limitations of the asserted claims. This Court should affirm across the board.

## Jurisdiction and Motion to Dismiss

As a preliminary matter, SCJ moves to dismiss this appeal for lack of jurisdiction under Article III of the Constitution. Zip Top's opening brief to this Court revealed that it "sold its entire business, *including the '890 Patent*, to LGI-ZIP TOP LLC, which is a wholly owned subsidiary of Let's Gel, Inc." BlueBr4 (emphasis added). That was news to SCJ. Zip Top had never notified SCJ or the district court about its sale of the '890 patent, the only patent at issue here. Zip Top's previously undisclosed sale of the '890 patent casts serious doubt on its standing to file or maintain the present appeal. Accordingly, SCJ now requests—in its response brief pursuant to Federal Circuit Rule 27(f)—that this Court dismiss Zip Top's appeal.

The party invoking federal jurisdiction bears the burden to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Standing must exist at all stages of judicial proceedings," and where necessary must be determined "anew on appeal." *Landmark Land Co. v. FDIC*, 256 F.3d 1365, 1380 (Fed. Cir. 2001); *see also Uniloc USA, Inc. v. Apple Inc.*, 784 F. App'x 763, 766 (Fed. Cir. 2019). Accordingly, "'the standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.'" *Canadian Lumber Trade All. v. United States*,

517 F.3d 1319, 1338 (Fed. Cir. 2008) (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64 (1997)). "If a plaintiff's claims cease to present a 'case or controversy' due to developments during litigation, those claims become moot." *Id.* An infringement plaintiff can lose standing if it transfers title to the asserted patent during litigation. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1370 (Fed. Cir. 2008), *mandate recalled and amended on other grounds by* 557 F.3d 1377 (Fed. Cir. 2009).

According to Zip Top, it "sold its entire business, including the '890 Patent" to an entity identified as LGI-ZIP TOP LLC. BlueBr4. But LGI-ZIP TOP LLC was not a party below and is not a party to this appeal, despite its apparent sole ownership of the '890 patent. Zip Top remains the only appellant before this Court, and it was the only appealing party specified in the notice of appeal. Appx5500-01; *see* Fed. R. App. P. 3(c)(1)(A) (the notice of appeal must "specify the party or parties taking the appeal").

The only basis Zip Top has ever asserted for its Article III standing to pursue the infringement claims at issue here was its ownership of the '890 patent. Appx198 ¶ 24. But its own statements confirm that no longer holds true. Zip Top's current lack of ownership interest in the '890 patent thus "creates a serious question" about its Article III standing. *WiNet Labs LLC v.*

*Motorola Mobility LLC*, 855 F. App'x 672, 674-75 (Fed. Cir. 2021). Zip Top filed the notice of appeal on April 4, 2024. Appx5500. But Zip Top has not specified exactly when ownership of the '890 patent passed to LGI-ZIP TOP LLC: Zip Top's brief says only that it sold the patent in "April 2024." BlueBr4. If that sale occurred on or before April 4, Zip Top lacked standing when it filed the notice of appeal. In that case, the result would be an incurable jurisdictional defect, requiring dismissal. *Am. Fed'n Gov't Emps., Loc. 1367 v. Dep't of the Air Force*, 61 F.4th 952, 955-56 (Fed. Cir. 2023).

And even if Zip Top did have standing at the outset of the appeal, it certainly lacks standing to remain a party and continue pursuing this case now. In that scenario, the Court should require substitution of Zip Top with LGI-ZIP TOP LLC or whatever entity has standing to continue this appeal. *See Olaplex, Inc. v. L'Oreal USA, Inc.*, 845 F. App'x 943, 947-49 (Fed. Cir. 2021).

Accordingly, SCJ requests that Zip Top's appeal be dismissed for lack of jurisdiction, or if the now-apparent jurisdictional defect can be cured, that Zip Top at least be replaced as appellant by a party with standing to maintain this appeal.

## Issues Presented

1. Zip Top sued as owner of the ’890 patent and filed this appeal from the district court’s judgment of noninfringement. But Zip Top has since sold the ’890 patent to a non-party and no longer has any apparent concrete interest in this dispute. Does Zip Top lack Article III standing to pursue this appeal?

2. At claim construction, both parties agreed on the ordinary meaning of the term “spout.” The district court recognized that undisputed ordinary meaning, and it confirmed that the specification, drawings, and surrounding claim language were all in accord. Did the district court correctly construe “spout” as used in the ’890 patent’s claims?

3. The district court’s construction of “spout” required a distinct feature that directs liquid and facilitates pouring from a container. The only infringement theory Zip Top presented before the district court ran afoul of that construction, and Zip Top did not present any evidence of such a spout in the accused products. Did the district court correctly grant summary judgment of noninfringement?

4. To succeed on its cross-motion for summary judgment of infringement, Zip Top had to establish that no material disputes of fact existed

as to any limitation in the asserted claims. But SCJ submitted a wealth of documentary evidence and expert testimony explaining why the accused products failed to satisfy multiple claim limitations. Did that evidence preclude summary judgment in Zip Top's favor?

## Statement of the Case

This appeal arises from plaintiff Zip Top's assertion of two patents against SCJ. The district court granted summary judgment of noninfringement on both patents. Appx2-24. Zip Top now appeals only as to U.S. Patent 11,383,890 (the '890 patent), which claims methods for making silicone containers.

### I. Background

#### A. The parties

SCJ is a family corporation that has for over 100 years provided consumers with high-quality products under brand names such as Pledge®, Glade®, Windex®, and—relevant to the current appeal—the Ziploc® family of storage products. SCJ's Ziploc products include not only its traditional Ziploc resealable storage bags, but also reusable silicone pouches and containers known as Ziploc Endurables®.

Zip Top produced its own line of silicone storage containers, which it contends embodied the '890 patent. *See* Appx3752-55. As noted above in conjunction with SCJ's motion to dismiss, Zip Top represented in its opening brief that it has now "sold its entire business" to a non-party identified as LGI-ZIP TOP LLC. BlueBr4. Zip Top's brief also suggested that competition with SCJ forced Zip Top to enter bankruptcy and sell its assets, but that contention rests entirely on speculation from its founder. *See id.* (citing Appx4206 ¶ 13).

Zip Top's account is also at best incomplete. Zip Top did file a voluntary Chapter 11 bankruptcy petition in October 2023, but the United States Trustee soon objected to the terms of Zip Top's proposed sale as "provid[ing] no real benefit to the estate and its unsecured creditors." *In re Zip Top Inc.*, Case No. 23-10832-smr (Bankr. W.D. Tex. Dec. 27, 2023), ECF No. 82 at 2. In response, Zip Top chose to withdraw that proposal, and its bankruptcy petition was accordingly dismissed the next day. Notice of Withdrawal of Document, *In re Zip Top Inc.*, Case No. 23-10832-smr (Bankr. W.D. Tex. Jan. 3, 2024), ECF No. 89; Order Dismissing Case Without Prejudice, *In re Zip Top Inc.*, Case No. 23-10832-smr, (Bankr. W.D. Tex. Jan. 4, 2024), ECF No. 90. Zip

Top's apparent sale to LGI-ZIP TOP LLC in April 2024 thus occurred outside of bankruptcy proceedings and well after dismissal of its voluntary petition.

**B. The '890 patent**

The '890 patent is titled "Silicone Molding Process for Making a Container with Zipper Members Tapered at a Flexible Spout." Appx25. The patent issued on July 12, 2022, and purports to claim priority from a provisional application filed on March 2, 2017. Appx25-26. The claims recite methods for making silicone containers that must include, among other features, "at least one flexible spout." Appx52-53 (independent claims 1, 9, 15).

The '890 patent's specification describes the "spout" as allowing fluid "to be poured out." Appx51 (10:5-6); *see also id.* (10:66-67), Appx52 (11:2-3) ("fluid may flow ... through either of the spouts."). Spouts are also depicted in several drawings provided with the specification. For example, Figure 6A shows a spout marked with reference numeral 63 (highlighted in yellow below):




FIG. 6A

Appx42; *see also* Appx48 (3:62-63). Similar configurations are shown in Figures 5A (below left) and 7A (below right):




FIG. 5A




FIG. 7A

Appx39, Appx45; *see also* Appx50 (8:42-43), Appx51 (10:20-21).

The claims of the ’890 patent recite a container made up of two specified portions. *E.g.*, Appx52 (11:29-32). The first “container portion” has a mouth with “at least one flexible spout.” Appx52 (11:29-31). The second “zipper portion” includes both “female” and “male” zipper members. Appx52 (11:32-35, 11:47-51). In claim 1, those zipper members have an end section that must be “proximate the at least one flexible spout,” Appx52 (11:39-40, 11:54-55), while in claim 9, the zipper members “terminate[ ]” at the spout. (Appx52 (12:51-57)).

The specification likewise explains that the mouth of the container forms the spout. Appx50 (8:42-43) (discussing the embodiment of Figs. 5A-C); *see also, e.g.*, Appx47 (2:61-62) (teaching that "the mouth has first and second spouts"); Appx51 (9:1-2) ("At each end of the interior of the mouth 62, the tumbler 60 has a spout 63.").

## II. District court proceedings

On September 15, 2022, Zip Top filed suit alleging that SCJ's Ziploc Endurables products infringed the '890 patent. Appx103-04, ¶¶ 31-35.[1] Zip Top asserted claims 1, 3-5, 7-9, 11, 12, and 14 of the '890 patent. Appx3889.

### A. The accused Ziploc Endurables products

Ziploc Endurables containers (depicted below) are oven, microwave, freezer, and dishwasher safe reusable silicone containers designed to go directly from freezer to oven to table. Appx3808-09; Appx3891. Images of those products are shown below.

[1] Zip Top also asserted a second patent, U.S. Patent No. 11,358,755, but it has abandoned those claims on appeal.




Appx481.[2]

The ends of the zippers in the Endurables containers are bonded together to prevent liquid leakage. Appx3892-93; Appx482. Specifically, after the container is molded, silicone material is applied between the zippers to bond them together at each end of the container. Appx3892-93. If a user attempts to pour liquid from an end of the container, this design feature obstructs the opening and interferes with the flow of liquid out of the container.

[2] Physical samples of the accused Ziploc Endurables small and medium containers were provided to the district court. *See* Appx535 (confirming that product samples were submitted as Exhibits 15 and 16 in support of SCJ's motion for summary judgment). Physical samples of those same products are being submitted to this Court with the joint appendix pursuant to Federal Circuit Rule 25(c)(1)(B) and cited in the briefs as Appx5203 and Appx5204.

Appx3892; Appx3944-45. Endurables containers also include sealed tabs at each end known as Cool Grab Tabs, which extend outward from the container sides and opening to allow easy handling after heating. Appx3893; Appx3932, Appx3943-45.







Appx482.

SCJ does not instruct customers to pour liquid from Endurables containers—doing so could be hazardous, as liquids such as soups and sauces may be very hot after being cooked or reheated in the containers. Appx3893; Appx3817-18. Instead, in its promotional internet recipes, SCJ instructs cooks to "[l]adle" or "spoon" liquids from the Endurables containers. Appx3817-18.

### B. Zip Top's infringement contentions

Zip Top's infringement contentions purported to map each asserted claim limitation to the accused Endurables containers, including the '890 patent's "spout" limitation. Appx3789-90. Zip Top relied on two different "versions" of the SCJ product to allege the presence of a spout. It first cited and discussed product samples that Zip Top modified by ripping the bonded end portions of zippers apart. Zip Top also discussed Endurables products as actually sold in the United States (i.e., with the partially bonded zipper members). Appx483.[3] SCJ does not produce or sell products as altered by Zip Top to separate the ends of the zippers. Appx3892-93.

### C. Summary judgment proceedings

SCJ moved for summary judgment of noninfringement, asserting that the accused products lack spouts as required by the '890 claims. *See* Appx477 & n.1. First, SCJ argued that the term "spout" has a plain meaning known to skilled artisans that was consistently used throughout the '890 patent and

[3] Zip Top again relies on photographs of those altered product samples in its brief on appeal. BlueBr50 (Zip Top "modified" the accused container to "pull apart" the fused zipper members); BlueBr53 n.1; BlueBr54, 56 (container has been "pulled apart").

the prior art described in the file history. Namely, a "spout" was recognized as a "distinct feature that directs liquid from and facilitates pouring of fluid from a container." Appx511 (DSOF20); *see* Appx8. SCJ further pointed out that its Endurables containers have no such distinct feature. Appx487-90. Instead, SCJ designed its containers in a manner that obstructs (rather than facilitates) the flow of liquids. Appx489-90.

SCJ's arguments were supported not only by the accused products themselves, but also by the expert opinions of Dr. Timothy Osswald. Dr. Osswald explained that the accused products not only lack a spout, but in fact contain the functional opposite of a spout because the accused features of the Endurables products obstruct liquid flow. Appx3943-46; Appx490; Appx4902-06. Dr. Osswald also explained that if the accused Endurables products could be considered to have a "spout," so too would any other sealable container with a mouth. Appx3944-45; *see* Appx489-91.

On April 20, 2023, Zip Top responded and filed its own combined cross motion for summary judgment of infringement. Zip Top did not dispute SCJ's proposed construction of "spout." Appx4019 n.1 ("For purposes of these cross-motions, [Zip Top] accepts this plain and ordinary meaning."). Rather, it argued that construction, while correct, should also expressly

include what Zip Top dubbed "cross over" spouts. Appx4020-21. That self-minted term appears nowhere in the '890 patent or its file history. Zip Top nonetheless argued that "cross over" spouts were depicted in Figures 5B and 5C of the '890 patent. Appx4021-22. According to Zip Top, the zipper members in that embodiment "cross over at the spout location" and thereby form a spout. Appx4021.

Beyond evidence that zippers in the accused products overlapped when engaging, Zip Top offered scant evidence to support infringement. It relied on a series of attorney annotations to various product images to suggest the presence of a "cross over" spout, as well as two photographs of an unknown individual pouring water from an accused container. *See* Appx4024-28. Zip Top never adduced evidence of a "distinct feature" in the accused products that "directs liquid from and facilitates pouring of fluid from a container," as required by the agreed construction of "spout." Appx4025 ("SCJ's Accused Product has the same 'cross over' spouts. SCJ's Accused Product forms a 'cross over' spout where the male zipper member and female zipper member engage, even when the mouth is open."); *see generally* Appx4023-28. On reply, Zip Top relied on the same arguments and images. *See* Appx4800, Appx4803-05.

Zip Top's cross-motion for summary judgment of infringement was equally shallow. Under the local rules, Zip Top was required to propose undisputed facts in support of its cross motion. *See* N.D. Ill. L. R. 56.1(a)(2), 56.1(d). Relying almost solely on attorney argument, Zip Top failed to offer proposed constructions, expert support, or *any* documentary evidence of infringement beyond simply pointing to the accused product samples and their packaging. *See* Appx4033-38. For example, Zip Top proposed no facts related to the container "mouth," "zipper member ends," or "flanges," let alone facts addressing the relationship between these limitations and the "spout," as required by the claims. *See* Appx4087-90.

And Zip Top proposed only two facts related to the alleged existence of a spout in the accused products: (1) that the male and female zipper members of the Endurables products "'cross over' each other at the tips so that the male and female zipper elements completely engage at the tips, even when the container is open," Appx4087 (PSOF 8); and (2) that a user may hold an accused product "by the 'Cool Grab Tabs' and pour fluid out of the container over a 'Cool Grab Tab,'" Appx4088 (PSOF 9). SCJ disputed that these propositions, even if accepted, establish that the accused device contains a spout under the undisputed plain meaning. *See* Appx4279-83.

### D. The district court's summary judgment order

The district court granted SCJ's motion for summary judgment of non-infringement. The court construed the term "spout" as a "distinct feature that directs liquid from and facilities the pouring of fluid from a container," a reading that was "consistent with the plain and ordinary meaning" of the word. Appx9. The district court also rejected Zip Top's efforts to encumber that agreed plain meaning with additional verbiage referencing so-called "cross over" spouts, deeming Zip Top's argument a "boondoggle" and a "sideshow." Appx9. Considering the '890 patent's claims, specification, and figures, the court held that while zipper members in the claimed products may cross over one another, partially engaged zipper members do not form a spout; instead, the zipper members are separate from the spout. Appx9.

The court found support for that conclusion in the claims and the written description. As to the claims, the court noted that they recite, a "unitary whole container" with two distinct portions: (1) a "container portion," including among other things "at least one flexible spout," and (2) a "zipper portion" including male and female zipper members. Appx9. The claimed zipper member is "proximate" or "terminates at" the flexible spout but is "not in the same 'portion' of the claimed 'unitary whole container' as the

spout." Appx9-10. As the district court reasoned, "[i]f they 'terminate' at the spout, they are not part of the spout." Appx10.

As to the specification and figures, the court concluded that "[e]ach embodiment depicted in the patent, including the embodiment depicted in Figures 5A, 5B, and 5C, includes a distinct, approximately V-shaped or 'lip-like' feature at each tip, separate from the zipper members, that resembles what anyone would call the spout of a pitcher or like container, and it is shaped as if to facilitate pouring in the same manner." Appx10 (citation omitted); *see also* Appx11 (discussing '890 Figs. 6A and 7A).

The court thus concluded, "[b]ased on the claim language, the drawings, the written description, and the entire specification, it appears that, whether the zipper members cross over, engage, or disengage at the spouts in an open configuration, the zipper members are not the spout or part of it; rather, the spout is a separate feature." Appx12.

Applying its construction, the district court held that the accused containers "contain no distinct feature that can be fairly described as directing liquid from the container and facilitating the pouring of fluid from it." Appx12. In particular, although Zip Top identified the point at which the zipper members "crossed over" in the accused containers, "this is not a

'distinct' feature that 'directs liquid from' the container or 'facilitates the pouring of fluid' from it; at best, it permits the pouring of fluid when the open container is tipped to the side." Appx12-13.

Furthermore, the district court explained that it was not enough that one could pour water from the container, as shown in Zip Top's photographs: "Of course, the fact that one *can* pour fluid out of a Ziploc Endurables container does not mean that any part of the container over which fluid passes is a spout; one can pour fluid out of any open container, no matter how it is shaped or designed, regardless of whether it has a spout." *Id.*

Given the lack of evidence that the accused products contain a "spout" as required by every asserted claim, the district court granted SCJ's motion for summary judgment. Appx13. And having found that the accused products did not meet at least that limitation, the district court denied Zip Top's cross-motion as moot. Appx23.

## Summary of Argument

If this Court does not dismiss the appeal, it should affirm the district court's judgment of noninfringement.

Zip Top argues that the district court mistakenly introduced a negative limitation when construing the term "spout" in the asserted claims of the

’890 patent. But the district court correctly construed that term—it considered and accepted the ordinary meaning presented by both parties, and it carefully explained why that meaning aligned with guidance provided by the specification, drawings, and surrounding claim language in the ’890 patent. Furthermore, the district court rejected Zip Top’s late-breaking proposal to supplement the agreed ordinary meaning of “spout” with additional language about purported “cross over” spouts that would have supported Zip Top’s infringement theory but had no basis in—and indeed would have conflicted with—the intrinsic record. Rather than adding a negative limitation, the district court simply rejected Zip Top’s acontextual addendum to the agreed ordinary meaning.

Zip Top offers a handful of other criticisms of the district court’s construction, but all fail. Molding a one-piece “unitary whole container” does not preclude the resulting containers from having distinct features. The asserted claims recite the spout and zipper members as separate structural limitations, creating a presumption that those are distinct components of the invention. And Zip Top’s attempt to equate the zipper members with the spout would render the claims incoherent by requiring that the zipper members are “proximate” or “terminate at” themselves. In addition, Zip Top’s

new argument about a spout appearing above or below the spout does not matter because the two features would still be separate as claimed. Nor does the claims' use of "comprising" affect the district court's construction. The comprising transition potentially allows claims to cover products containing additional unclaimed features, but it does not reach into and vitiate limitations that are expressly recited in the claims.

Having construed the asserted claims, the district court correctly granted summary judgment of noninfringement. The only infringement theory Zip Top asserted in its summary judgment briefing depended on identifying "cross over" spouts allegedly created by the zipper members in the accused products. Zip Top contends that the district court disregarded a second infringement theory, but that was never presented below. At any rate, the district court did not limit its analysis to purported "cross over" spouts, and it correctly concluded that there was no evidence of a "spout" in the accused products under any theory.

Finally, Zip Top argues that the district court erred by declining to grant summary judgment of *infringement* in favor of Zip Top. Even if SCJ had not demonstrated Zip Top failed to present evidence of a "spout" in the accused products, SCJ cited significant documentary evidence and expert

testimony that at least sufficed to create a factual dispute about whether the accused products met that and several other limitations of the '890 claims. Zip Top's alleged proof of infringement was conclusory and unfounded, depending almost entirely on its own attorney-created annotations of the patent figures and accused products. Under any view of the record, Zip Top certainly was not entitled to summary judgment of infringement.

## Standards of Review

Article III standing to sue for patent infringement is a question of law. *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001). Claim construction is a question of law but may involve subsidiary factual findings subject to clear error review. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 327 (2015). Summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This Court reviews a district court's grant of summary judgment under the law of the applicable regional circuit. *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 714 (Fed. Cir. 2022). The Seventh Circuit reviews the grant of summary judgment without deference. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018).

## ARGUMENT

### I. The district court correctly construed "spout" according to the agreed plain meaning and consistent with the intrinsic record

Zip Top argues that the district court misconstrued the word "spout" in the '890 claims by imposing a negative limitation. But the district court did no such thing. It adopted the ordinary meaning espoused by both parties, and the court carefully catalogued the intrinsic support for that understanding from the '890 patent's claims, drawings, and written description. What Zip Top now calls a negative limitation did not change or further limit the construction—the statement it cites instead addressed and rejected Zip Top's attempt to prop up its baseless infringement theory by introducing additional language that would have distorted the parties' agreed plain meaning and contradicted the intrinsic record.

#### A. The district court conducted the right analysis and did not introduce a negative limitation

The district court construed "spout" to mean a "distinct feature that directs liquid from and facilitates the pouring of fluid from a container." Appx9. Zip Top repeatedly endorsed that definition as the "plain and ordinary meaning" and "agreed construction." Appx4019 n.1 ("[Zip Top] accepts this plain and ordinary meaning."), Appx4021 (confirming plain and

ordinary meaning); Appx4803 ("[T]he agreed construction of 'spout' is 'a distinct feature that directs liquid from and facilitates the pouring of fluid from a container.'"). In its own words, Zip Top "accepted this 'spout' construction … because it is consistent with 'the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence.'" Appx4797 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc)).

That reading was not only undisputed, but also substantively correct. The "ordinary and customary meaning of a claim term" in the relevant field provides an "objective baseline" for construing patent claims. *Phillips*, 415 F.3d at 1313. Like the parties, the district court recognized a widespread structural and functional understanding of "what anyone would call the spout of a pitcher or like container." Appx10. And the '890 patent reaffirmed the ordinary meaning of a spout—its figures show "a distinct, approximately V-shaped or 'liplike' feature at each tip" of the disclosed containers, "shaped as if to facilitate pouring in the same manner." Appx10 (citation omitted); *see* Appx29, Appx33, Appx37-46. The district court's construction of a spout as a distinct feature that directs liquid from and facilitates pouring of fluid from a container tracked the agreed plain meaning of the word.

Having identified the meaning of a "spout" as used in the asserted claims, the district court turned to addressing a supplementary proposal Zip Top raised for the first time via reply. Appx9-12. Specifically, Zip Top tried to engraft additional language beyond the term's ordinary meaning to specify that a "spout" would include, among other things, "'cross-over' zipper members." Appx4798. According to Zip Top, that was necessary because Figures 5B and 5C of the '890 patent showed ends of the male and female zipper members that remain engaged when the mouth of the container is open. Appx4800-02. In parallel, Zip Top argued that the accused products' zipper members *themselves* satisfied the "spout" limitation. Specifically, Zip Top identified the inside edges of the zipper members "where the male and female zipper members 'cross-over'" as the accused "spout." Appx4803; *see also* Appx4804 (asserting that "where the zipper members 'cross-over' corresponds to the claimed 'at least one flexible spout'"); Appx4022-23 (asserting the accused product "forms a 'cross over' spout where the male zipper member and female zipper member engage").

Zip Top's attempt to construe "spout" as including the zipper members contradicted the agreed plain meaning and the intrinsic record. As the district court pointed out, Zip Top's proposed addendum to the construction

of "spout" treated the zipper members "as *part of the spout*, rather than as separate elements of the patented invention." Appx9. But the undisputed plain meaning required the claimed spout to be a "distinct feature" of the container, Appx9, and Zip Top's proposed supplementary construction would have created an internal contradiction by imposing double duty on the claimed zipper members.

Zip Top's late-breaking proposal also ran headlong against the intrinsic record. *See* Appx9-12. Asserted independent claims 1 and 9 both recite a container with two identified portions: (1) a "container portion" with a mouth that has at least one spout, and (2) a "zipper portion" with female and male zipper members. Appx52 (11:29-58, 12:46-57). By specifying that the spout is in a different portion of the claimed container than the zipper members, the claims dictate that the zipper members are distinct from the spout. In addition, claim 1 requires that each zipper member must have an "end section proximate the at least one flexible spout." Appx52 (11:39-40, 11:54-55). And in claim 9, the zipper members must "terminate[] at" the spout. Appx52 (12:52-57). Zip Top's proposed construction and associated infringement theory thus would have rendered those limitations nonsensical because a zipper

member that is "proximate" the spout or "terminates at" the spout cannot also be the spout.

The specification and drawings further undermine Zip Top's position. When discussing Figures 5B and 5C, the asserted bases for Zip Top's proposed construction, the '890 patent's specification teaches that the zipper members are "just inside," and thus separate from, the mouth of the container, while it is the mouth that "forms" the spout. Appx50 (8:23-43). In addition, Figure 5A provides a perspective view of the same embodiment depicted in Figures 5B and 5C. Appx48 (3:54-61). And Figure 5A—like the other perspective views of disclosed containers—shows distinct spout structures that are provided separately from the zippers. *See* Appx39, Appx42, Appx45. Zip Top expressly agreed that those figures all depicted the spout as a distinct feature. Appx4056-57 (Zip Top's response to DSOF 21).

The district court thus adopted the parties' agreed plain meaning of a "spout" as its operative construction. Appx12. It reached that conclusion only after considering Zip Top's position and walking through the numerous barriers within the '890 patent to conflating zipper members with the claimed spout. Appx9-12. Accordingly, the court concluded its analysis by clearly and directly rejecting Zip Top's invitation to depart from ordinary

meaning and intrinsic guidance: "The Court does not construe the term 'spout' to include the zipper members, which are a separate element of the invention." Appx12.

By declining Zip Top's faulty claim construction proposal, the district court did not "add a negative limitation" as Zip Top now asserts. BlueBr16 (citing Appx12).[4] Negative limitations "generally recite an express exclusion of material." *Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1347-48 (Fed. Cir. 2016), *overruled on other grounds by Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) (en banc). By concluding that a spout is a "distinct feature," consistent with its agreed plain meaning, the district court confirmed what a spout *is* and did not exclude anything from that ordinary understanding. The district court performed a thorough analysis, rejected Zip Top's acontextual proposal, and affirmatively construed "spout" in a manner consistent with its plain meaning, the surrounding claim language, and its description within the '890 patent. *See id* at 1346-47. That construction was correct.

---

[4] Zip Top quotes the district court's opinion twice when identifying the purported "negative limitation." BlueBr16. The second time, Zip Top's brief erroneously cites Appx11, but the quoted language appears at Appx12.

### B. Zip Top's counterarguments are meritless

#### 1. Use of integral molding does not preclude the resulting "unitary container" from having distinct features

Zip Top first argues that because the claims recite molding processes for making a "unitary whole container," the resulting product "has no separate features but is a unitary whole." BlueBr18. Addressing independent claims 1 and 9, Zip Top reasons the claims "do[] not recite that the zipper members are not the spout or part of it" and do not recite that those claimed features are "separate." BlueBr18-19.

Zip Top's argument makes no sense. For one thing, accepting Zip Top's premise would mean that the disclosed products could contain no separate features *at all*—for example, the container's mouth could never be recognized as distinct from its base. *See* Appx39 (showing base 51 and mouth 52). It would also run counter to the acknowledged plain meaning of "spout" as a "distinct feature," as well as the inventors' disclosure of numerous separately identified structural features throughout the '890 patent's drawings and written description.

Further, the claims themselves recite the spout and zipper members as separate structural limitations. *See* Appx52 (claims 1 and 9). Components

recited separately in a claim, like the spout and zipper members here, are presumed to be distinct components of the patented invention. *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1382 (Fed. Cir. 2022). Zip Top has identified nothing in the '890 patent that overcomes that presumption. Rather, the available evidence confirms it. There is no suggestion that "cross over" zipper members can function as a spout; if anything, the specification describes configurations intended to ensure that the zipper members "do not interfere" with the spout. Appx51-52 (10:1-14, 10:61-11:4); *see Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249, 1254-55 (Fed. Cir. 2010) (finding "no suggestion that the hinged arm or its hinges can function as springs").

In addition, concluding that the zipper members and spouts can be the same structure would "render[ ] the asserted claims nonsensical." *Becton*, 616 F.3d at 1255. As previously noted, claim 1 requires the zipper members to be "proximate" to the spout, and claim 9 requires them to "terminate at" the spout. Appx52 (11:39-55, 12:52-57). If the zipper members and spouts were considered one and the same, then the zipper members would have to be proximate to or terminate at *themselves*, rendering the claims incoherent. *See Becton*, 616 F.3d at 1255; *Comcast Cable Commnc'ns, LLC v. Promptu Sys. Corp.*,

838 F. App'x 551, 553 (Fed. Cir. 2021). The district court thus correctly construed the spout as a distinct feature relative to the separately recited zipper members.

### 2. Zip Top's argument regarding a spout extending above and below the zipper members is both new and irrelevant

Zip Top criticizes (at 20-28) the district court's observation that the spout 53 shown in Figure 5A "is separate from and above the 'zipper members' at 57 and 58." Appx11. Zip Top misleadingly suggests that meant the district court incorrectly assumed "each embodiment depicted in the patent" likewise showed spouts entirely above the zipper members. BlueBr22-23. But the district court never said that. The only time the district court mentioned "each embodiment depicted in the patent," it correctly noted that they all showed a "*distinct*, approximately V-shaped or 'liplike' feature at each tip." Appx10 (emphasis added).

And the district court focused particularly on the configuration shown in Figure 5A because the claim construction arguments Zip Top presented relied entirely on the embodiment in Figures 5A-C to equate "cross over" zipper members with a spout. *See* Appx4019-28; Appx4798-4803. Zip Top's reliance on Figures 6 and 7 to argue here (at 23-28) that the figures all denote

spouts at or below the zipper members is new on appeal and should be disregarded.

That argument is also substantively meaningless. Regardless of whether any drawing showed a spout extending above *and below* the zipper members, that would have no bearing on whether those features were *separate*. The district court concluded that Figure 5A showed a spout "separate from *and* above" the zipper members. Appx11 (emphasis added). After spending pages on whether the spouts are *above*—attacking the district court for overlooking an issue it never raised—Zip Top shifts abruptly to a conclusion about whether the spouts are *separate*, without ever explaining how one issue would affect the other. *See* BlueBr27 (arguing that the district court "misinterpreted the embodiments of Figures 5A and 5C" because the spouts are "both above **and below** the zipper members"), BlueBr28 (arguing the district court thus "improperly added negative limitations" that the spout is a separate feature).

Furthermore, even if any figure did show a spout extending above and below the zipper members, and even if that did somehow indicate those features were not separate structures, Zip Top's argument could—at most—indicate that the specification *disclosed* multiple embodiments. But claim

construction must interpret the *claims*, and the asserted claims all recite the spout and zipper members as separate features. *See supra* § I.B.1. A specification describing features as overlapping in some embodiments and separate in others could not negate a patentee's choice to claim only one of those configurations. *See Kyocera*, 22 F.4th at 1382-83.

#### 3. Zip Top's unilateral annotations are not evidence and cannot rewrite the patent

Zip Top insists (at 28, 30) that the spout shown in Figures 5A and 5C "includes the tops of the zipper members where they 'cross over.'" As with the rest of its brief, Zip Top offers no support for that position beyond its own coloring-book approach to the '890 patent, unilaterally adding (among other things) a red line running along arbitrarily selected portions of an edge of each zipper member:




BlueBr29, 30. The cited patent figures include none of the color, annotations, or purported boundaries offered here as the foundation for Zip Top's arguments. And Zip Top presents nothing else—no supporting text from the specification, nothing from the file history, and no expert testimony—to substantiate its redrafting efforts. Putting aside what Zip Top now wishes the figures showed, nothing in Figure 5A or 5C demonstrates that the spout 53 includes the tops of the zipper members.

Zip Top's other criticisms of the district court go nowhere. It once again invents new features absent from the '890 patent's figures to illustrate purported "end sections" and "taper sections" of the zipper members in the

diagrams shown above, which it suggests are somehow distinct from the zipper members as a whole. From there, Zip Top argues (at 29-30) that the district court misunderstood what had to be "proximate" or what must "terminate at" the spout in claims 1 and 9 by concluding that the zipper members "cannot overlap" and must terminate at the "entire" spout.

The district court did not say that and, at any rate, Zip Top does not explain how those assertions relate to whether the zipper members and the spout are distinct features of the claimed containers. The district court explained that Zip Top's theory equating the zipper members with the spout would muddle the claims by creating illogical requirements for the spout to be "proximate" or "terminate[] at" itself. Appx9-10. Zip Top has no answer to that straightforward concern.

#### 4. "Comprising" does not affect the construction of "spout"

Finally, Zip Top points to the word "comprising" in the asserted claims to argue (at 31-32) that the claimed zipper members should be read to include the spout. As an initial matter, Zip Top never argued before the district court that the claims' use of "comprising" affected the construction of any term. *See* Appx4018-4028; Appx4797-4803. This Court can and should disregard

Zip Top's new theory for that reason alone. But even if considered, Zip Top's cursory argument misapprehends the effect of "comprising" in the claims.

Zip Top first states the basic premise that "comprising claims are construed as 'open-ended,' meaning 'the addition of elements not recited in the claim cannot defeat infringement.'" BlueBr31 (citations omitted). It then summarily asserts: "Thus, where the zipper portion is a 'comprising' claim element, it does not 'exclude the possible presence of addition [sic] elements'—part of the 'at least one spout.'" BlueBr32. But Zip Top has things backward. The relevant question is the construction of "spout," not "zipper portion," so it does not matter whether and to what extent the claimed *zipper portion* can accommodate additional, unrecited elements.

Moreover, the use of "comprising" as an open transition phrase "does not remove the limitations that are present." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1409 (Fed. Cir. 2004). The '890 claims use "comprising" before introducing the top-level "container portion" and "zipper portion" limitations, but that cannot eliminate the recited requirement for a spout *in the container portion*, apart from the zipper portion. The use of comprising indicates that the asserted claims could cover products with additional elements, but it "does not reach into each of the [recited limitations]

to render every word and phrase therein open-ended." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007). While they can potentially encompass products with additional unrecited elements, the asserted claims still affirmatively require a container portion defining a mouth, where the mouth has at least one spout. Appx52 (11:29-31, 12:46-50). And those spout limitations do not recite any role for the separately recited zipper members.

Beyond its one-paragraph argument focused on the word "comprising," Zip Top reverts (at 32-35) to repeating the same unfounded assertions based on its own revisionist annotations of various figures in the '890 patent. Those arguments cannot change the express language of the claims or the actual disclosures in the specification, and they fail for the same reasons explained above.

The district court's construction of "spout" should be affirmed.

## II. The district court did not disregard Zip Top's alleged evidence of a spout

### A. Zip Top forfeited infringement theories based on "spouts" other than the purported "cross over" spout

Zip Top asserts that, even if its alleged "cross over" spouts are not the claimed "spout," the accused products nonetheless have a spout elsewhere. BlueBr38. According to Zip Top, there is "a portion of the mouth that extends

from the lip of the mouth down the zipper members," which constitutes a "'distinct feature that directs liquid from and facilitates the pouring of fluid from a container.'" *Id.* at 38-39. In other words, Zip Top now claims that there is a spout not just where the zipper members cross over, but also "above and below" that location. *Id.* at 36-37.

This is a new argument raised for first time on appeal. *Compare, e.g.*, Appx4025 (identifying at summary judgment the "spout" as the alleged "cross over" spout), *with* BlueBr38 (identifying the "spout" as an area "above the zipper members"). Zip Top was unequivocal in identifying its infringement theory before the district court: "[Zip Top]'s infringement theory has not changed. Via its Final Infringement Contentions, [Zip Top] disclosed the mouth portion of the Accused Product where the zipper members 'cross-over' corresponds to the claimed 'at least one flexible spout.'" Appx4804; *see also* Appx4803 ("The Accused Products clearly have 'at least one flexible spout' because where the male and female zipper members 'cross-over,' there is a distinct feature that directs liquid from and facilitates the pouring of fluid from the Accused Product.").

Zip Top claims that its new position was fully presented and nonetheless disregarded by the district court. But the record belies that assertion. In

support, Zip Top cites statements parroting various claim limitations that include the word "spout" (adding color) adjacent to various images of the accused products (also adding color). *See* BlueBr37 (citing Appx4033-36, Appx4038). But when identifying the alleged spout, these cited pages use the same images with the same coloring Zip Top elsewhere said depicted a "cross over" spout. *Compare* Appx4804 (purporting to show a "cross over" spout), *with* Appx4033-34 (relied on by Zip Top as disclosing its additional theory). Consistent with its single theory of infringement, Zip Top's only proposed fact even tangentially related to an alleged "spout" on the accused products identified the location where the zipper members crossed over. *See* Appx4087 (PSOF 8).

Accordingly, Zip Top forfeited its new theory, and this Court should disregard it. *See, e.g., Sage Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997).

### B. The district court did not disregard evidence

At any rate, the district court did not disregard evidence of infringement or limit its analysis to "cross over" spouts, contrary to Zip Top's arguments here. *See* BlueBr38-40, 47-58. Rather, taking into account the full record, the district court compared the construed claims to the accused

products. *See* Appx12-13. Based on that comparison, the district court correctly concluded that Zip Top had not come forward with any evidence of a "distinct feature" that "directs liquid from" and "facilitates the pouring of fluid from" the accused container. *See* Appx12-13. That conclusion was correct.

Zip Top identifies (at 48-51) the "physical exhibits," i.e., samples of the accused products, as supporting its infringement theory. Specifically, Zip Top (at 38, 48) purports to identify different spouts on images of those physical exhibits. But regardless of whether the alleged spout is formed via the zipper members crossing over, BlueBr47, or whether it is instead asserted as "a portion of the mouth" below or above those zipper members, BlueBr38, neither identified region is a "distinct feature" that "directs liquid from" and "facilitates the pouring of fluid from" the accused container, as required by the district court's construction. To the contrary, as the district court concluded after examining the same physical samples, there is no "distinct feature that can be fairly described as directing liquid from the container and facilitating the pouring of fluid from it." Appx12.

Zip Top next relies (at 39, 49-50) on two photographs of an unidentified person pouring water from the accused products. *See* Appx4203 ¶ 5,

Appx4212-15. But the *ability* to pour liquid from a container, which is all those photographs purport to establish, does not demonstrate the presence of a "spout" as required by the '890 claims. Indeed, if the mere ability to pour liquid from a container was enough to prove that a container includes a "spout," any container—whether a cup, bowl, purse, bag, can, jar—would have a spout. *See* Appx4255 ¶ 8. The district court agreed: "the fact that one *can* pour fluid out of a Ziploc Endurables container does not mean that any part of the container over which the fluid passes is a spout; one can pour fluid out of any open container, no matter how it is shaped or designed, regardless of whether it has a spout." Appx13. Zip Top does not address, let alone refute, that analysis.

Zip Top also rehashes its claim construction argument related to "cross over" spouts. BlueBr42-47. At bottom, Zip Top attempts to prove infringement by arguing that Figure 5B and the accused products each have a "cross over" zipper member configuration. *See id.* But as the district court correctly held, the claimed zipper members are a "separate element" from the spout. Appx12. As it did below, Zip Top nonetheless "insists that the point at which the zipper members cross over is a 'spout.'" Appx12-13. But as the district court concluded, that part of the zipper members "is not a 'distinct feature'

that 'directs liquid from' the container or 'facilitates the pouring of fluid.'" *Id.* Zip Top again points to no contrary evidence.

All that remains of Zip Top's so-called infringement evidence is attorney argument parroting portions of its briefing before the district court, including the same color-coded claim limitations and images (*compare* BlueBr40-42, *with* Appx4033-36), and a play-by-play of those images (BlueBr47-57), in which Zip Top for the first time attempts to provide explanations for its numerous unilateral annotations.[5] But notably absent from that drawn-out discussion is the identification of any actual evidence the district court disregarded. Indeed, there was no such evidence. As the district court held, "there is no genuine dispute of material fact that the accused product does *not* contain a 'spout'; no reasonable juror could find otherwise." Appx13. This Court should affirm.

[5] Much of this argument is directed not to the presence of a spout, but rather to limitations related to how the spout sits in relationship to, e.g., the end portion of the zipper members. *See* BlueBr40-42, 51-57. These issues are not germane to SCJ's motion for summary judgment, which was narrowly focused on the presence of a spout. Appx477 n.1. To the extent they are relevant to Zip Top's cross motion, they are addressed *infra.*

### C. Evidence of a spout above and below the zipper members is not "undisputed"

Finally, Zip Top claims (at 58) that SCJ did not dispute the presence of a spout "above and below" the zipper members in the district court and that SCJ accordingly failed to preserve any disagreement on appeal. Setting aside that Zip Top itself never raised that new theory of infringement—leaving SCJ nothing to dispute—its claim is contrary to the record.

In moving for summary judgment, SCJ did not limit its motion to so-called "cross over" spouts, an infringement theory that Zip Top first spelled out (and then steadfastly adhered to) in its summary judgment opposition. *See, e.g.*, Appx4232, Appx4236. Rather, SCJ moved for summary judgment in response to Zip Top's generic initial infringement contentions. *See* Appx483; *see also* Appx4253-55 (addressing Zip Top's shifting theories). When Zip Top focused on alleged "cross over" spouts in opposing SCJ's motion, SCJ addressed and debunked that new theory too. *See* Appx4231-32, Appx4236-38. Due to Zip Top's ever-changing theories, SCJ and its expert addressed the accused product as a whole, given Zip Top's broad contentions, and the "cross over" spout theory Zip Top pressed at summary judgment. *See* Appx3935, Appx3943-46 (Osswald Decl.); Appx4902-04 (Osswald Reply Decl.).

## III. Zip Top is not entitled to summary judgment of infringement

The district court correctly held that there is no genuine dispute of material fact that the accused products lack a spout. Appx13. For the many reasons detailed above, the district court's summary judgment ruling therefore should be affirmed. But even if this Court were to disagree that SCJ was entitled to summary judgment, there certainly was no basis to enter summary judgment in *Zip Top's* favor.

### A. Zip Top's cross-motion was inadequate

In moving for summary judgment, Zip Top relied almost entirely on attorney argument as evidence of a spout—failing to offer proposed facts, proposed constructions, expert support, or relevant documentary evidence. *See supra* § II.B; Appx4033-38. Those shortcomings alone warranted the district court's denial of Zip Top's motion. *See Moore U.S.A., Inc. v. Standard Reg. Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000); *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006).

### B. Additional evidence supports noninfringement

As the district court held, Zip Top adduced no evidence of a "spout" in the accused products. But even if that were not the case, to secure summary judgment of infringement, Zip Top would also need to show an *absence* of

evidence in SCJ's favor. *See, e.g.*, *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). While Zip Top claims otherwise (at 61), it cannot make such a showing. The record is replete with additional affirmative support for SCJ's position, even beyond that cited by the district court. *See, e.g.*, Appx523-24, Appx528-31 (proposed facts with record citation); Appx4308-11 (additional proposed facts with record citation); Appx3891-94 (Porchia Decl.); Appx3817 (instructing user to ladle liquid out of the accused products); Appx3931-32, 3941-46 (Osswald Decl.); Appx4253-57 (Osswald Reply Decl.).

To illustrate, SCJ offered evidence that its Endurables products were intentionally designed to prevent (rather than facilitate) liquid flow by using silicone to bond the zipper ends. *See* Appx3891-94. As SCJ's expert explained, this bonding alongside the Cool Grab Tabs impedes (rather than facilitates) the flow of liquid from the container. Appx3905; *see also* Appx3931-32, Appx3934-35, 3943-46 (Osswald Decl.); Appx4253-57 (Osswald Reply Decl.). Indeed, the record contained evidence not only that the accused products lack any spout, but also that they "contain features that are functionally opposite a spout." Appx3943 ¶ 101.

Zip Top does not even mention this evidence on appeal, let alone rebut it. Accordingly, to the extent Zip Top claims that SCJ has failed to produce evidence in support of its positions, the record says otherwise.

### C. Zip Top distorts SCJ's arguments before the district court

Zip Top further claims (at 37) that "when faced with Zip Top's cross motion for summary judgment of infringement, SCJ only disputed one other claim element: the mixing/molding limitation." But SCJ also specifically challenged at least Zip Top's "Elements [1C], [9D], [1F], [1J], [9F], [and] [9G]," which recite the spout in relation to separate features of the claims, including the "mouth" ([1C][9D]), the "female end section" [1F], and "the male end section" [1J]. *See* Appx4240; *see also* Appx4379-83, Appx4286-87 (disputing proposed facts in support of Zip Top's cross motion).

Regardless, to prevail on noninfringement grounds, it was enough for SCJ to show the accused products lack a single limitation of the asserted claims—whether it be the spout, the mixing/molding limitation, or something else. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005) ("If … even one claim limitation is missing or not met, there is no literal infringement."). SCJ was not required to detail each and every

shortcoming in Zip Top's evidence at the summary judgment stage to defeat Zip Top's cross-motion.

### D. Zip Top failed to show the accused products met the "mixing/molding" limitation

Finally, the asserted claims require evidence of how the accused products are manufactured with respect to the so-called "mixing/molding limitation" of claims 1 and 9. Appx 52 (11:22-23, 12:39-40); *see* BlueBr58-59. In moving for summary judgment, Zip Top relied on only the physical samples of the accused products alongside statements on the products' packaging that they were made of "PLATINUM SILICONE Reusable, food grade silicone." Appx4033 (citing Appx4089 ("The packaging of the Accused Products states, "PLATINUM SILICONE Reusable, food grade silicone."); Appx5203 (physical product sample); Appx5204 (same)). That's it. Zip Top offered no evidence about the meaning of the packaging's text to a skilled artisan or how such a statement allegedly supports infringement. Nor did Zip Top offer any evidence describing SCJ's actual manufacturing process. *See* Appx4033.

On reply, Zip Top attempted to cure this shortcoming with limited support (*see* Appx4809), and now doubles down on that effort here (at 59-60).

But that ship has sailed. *Hotel 71*, 778 F.3d at 601 (movant with burden of proof at summary judgment is required to provide the necessary support in its opening motion); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").

Regardless, given that all claims of the '890 patent require a "spout," the Court need not reach this issue on appeal. There is simply no evidence that the accused products have the claimed "spout," let alone evidence on that point sufficient to support summary judgment of infringement. The district court correctly denied Zip Top's cross-motion for the many reasons detailed above.

## CONCLUSION

The Court should uphold the district court's construction of the asserted claims and affirm the judgment of noninfringement.

Respectfully submitted,

PERKINS COIE LLP

by /s/Andrew T. Dufresne

Andrew T. Dufresne

*Counsel for SC Johnson & Son Incorporated*

## Certificate of Compliance

1. This brief complies with the type–volume limitation of Federal Circuit Rule 32(b)(1). The brief contains 9,295 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief was prepared in a proportionally spaced typeface using Microsoft Word and 14-point Valkyrie A font.

Dated: August 7, 2024

/s/Andrew T. Dufresne
Andrew T. Dufresne