**2024-1661**

# United States Court of Appeals for the Federal Circuit

ZIP TOP, INC.,

*Plaintiff-Appellant,*

– v. –

SC JOHNSON & SON INCORPORATED,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the Northern District of Illinois in No. 1:22-cv-05028, Honorable Jorge L. Alonso*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

R. WILLIAM BEARD, JR.
BRIAN C. BANNER
TRUMAN H. FENTON
SLAYDEN GRUBERT BEARD PLLC
401 Congress Avenue, Suite 1650
Austin, Texas 78701
(512) 402-3550
wbeard@sgbfirm.com
bbanner@sgbfirm.com
tfenton@sgbfirm.com

*Counsel for Plaintiff-Appellant*

AUGUST 28, 2024

CP COUNSEL PRESS (800) 4-APPEAL • (332023)

## TABLE OF CONTENTS


**I.** Introduction....1

**II.** Response to Motion to Dismiss for Lack of Standing....2

- A. Background....3
- B. Legal Standard....3
- C. Zip Top Has Standing and the Motion to Dismiss Should Be Denied....3

**III.** SCJ Failed to Show the District Court Correctly Construed "Spout"....5

- A. The District Court Incorrectly Construed "Spout" Must Not Include Zipper Members....5
- B. Zip Top's Arguments Were Timely Raised and Correct....9
  - **1.** Any Presumption of Separate Structural Limitations Is Overcome....10
  - **2.** The District Court First Raised Its "Spout Above the Zipper Members" Interpretation in Its Order....12
  - **3.** Zip Top Cited the '890 Patent, Not Just Annotations....15

**IV.** The District Court Disregarded Zip Top's Evidence of "Spout"....16

- A. Zip Top Did Not Forfeit an Infringement Theory Because Zip Top Has Consistently Asserted Only One Infringement Theory....16
- B. The District Court Disregarded Infringement Evidence....22

**V.** Zip Top Is Entitled to Summary Judgment of Infringement....29

- A. "Additional Evidence" of Bonded Zipper Ends Fails to Raise a Genuine Issue of Fact and Does Not Show Noninfringement....30
- B. "Additional Evidence" of Cool Grab Tabs Fails to Raise a Genuine Issue of Fact and Does Not Show Noninfrigement....36
- C. SCJ Has Not Disputed Additional Claim Elements....38
- D. The Accused Products Infringe the "Mixing/Molding" Limitation....39

**VI.** Conclusion....40

# TABLE OF AUTHORITIES

## CASES

*Am. Fed'n Gov't Emps., Loc. 1367 v. Dep't of the Air* Force,
61 F.4th 952 (Fed. Cir. 2023)....................2

*Becton, Dickinson & Co. v. Tyco Healthcare Fr., LP*,
616 F.3d 1249 (Fed. Cir. 2010)....................10

*CUPP Computing AS v. Trend Micro Inc.*,
53 F.4th 1376 (Fed. Cir. 2022)....................11

*Hill-Rom Services, Inc. v. Stryker Corp*.,
755 F.3d 1367 (Fed. Cir. 2014)....................11

*Kyocera Senco Indus. Toos Inc. v. Int'l Trade Comm'n*,
22 F.4th 1369 (Fed. Cir. 2022)....................10, 11

*Little Giant Ladder Systems, LLC v. Tricam Industries, Inc.*,
2022 WL 2287048 (D. Minn. 2022)....................10

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019)....................3

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006)....................29

*Powell v. Home Depot U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2011)....................11

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
427 F.3d 971 (Fed. Cir. 2005)....................4

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)....................11

## STATUTES, REGULATIONS, AND RULES

Fed. Cir. R. 27(f)....................2

# I. INTRODUCTION

SCJ moved to dismiss for lack of standing based on speculation that Zip Top did not own the ’890 Patent when it filed its notice of appeal. However, SCJ’s motion fails legally and factually because Zip Top did not assign the ’890 Patent until after it filed its notice of appeal. Further, the new assignee stands ready to substitute as a party when procedurally appropriate.

On the merits, SCJ failed to defend the district court’s construction of “spout.” SCJ invokes a presumption of separate structure that is overcome with intrinsic evidence. SCJ argues waiver even though Zip Top’s appeal brief is its first opportunity to respond to the district court’s claim construction, which did not adopt either party’s claim construction analysis. Finally, SCJ faults Zip Top for annotating figures to illustrate the content of the intrinsic record. Ultimately, that intrinsic evidence shows a “spout” covers disclosed embodiments with and without cross-over zipper members.

SCJ’s discussion of Zip Top’s evidence confirms the narrow disputes to be addressed here. SCJ again faults Zip Top for annotating figures and photographs while discounting the evidentiary value of physical samples and images of an accused product as it is tipped over to pour water through the accused spout. The V-shaped corner of the mouth of the Accused Product is clearly visible and is shaped as a spout. In addition, Zip Top cited evidence of water being poured from the

Accused Product in a concentrated stream of water that is visibly facilitated by a V-shaped corner of the mouth of the container. SCJ's discussion of bonded zipper ends and "Cool Grab Tabs" does nothing to counter the clearly visible V-shaped corner of the mouth of the container or the visible facilitation of the flow of water through the V-shaped corner.

When reviewed without deference to the district court's finding, the evidence of infringement is sufficiently clear to vacate summary judgment of non-infringement of the '890 Patent. Further, because SCJ failed to establish a material dispute of fact as to any claim element, Zip Top's evidence also supports an order rendering judgment of infringement of the '890 Patent.

## II. RESPONSE TO MOTION TO DISMISS FOR LACK OF STANDING

In its response brief, SCJ moved for dismissal of this appeal for lack of standing arguing that Zip Top possibly sold the '890 Patent to LGI-ZIP TOP LLC before filing its notice of appeal and therefore did not have standing to appeal. Resp. Br. 12. SCJ relies on a recent Federal Circuit decision to suggest Zip Top may face an incurable standing defect. Resp. Br. 12 (citing *Am. Fed'n Gov't Emps., Loc. 1367 v. Dep't of the Air* Force, 61 F.4th 952, 955-56 (Fed. Cir. 2023)). Zip Top opposes and asks this Court to deny SCJ's motion to dismiss. *See* Fed. Cir. R. 27(f).

This Court should deny SCJ's motion because Zip Top was the owner of the '890 Patent throughout the district court proceeding and at the time it filed its notice

of appeal. To the extent any other standing issue impacts this appeal, that issue is not jurisdictional and can and should be cured by substituting parties at an appropriate time.

**A. Background**

Zip Top filed its Notice of Appeal on April 4, 2024. Appx5500. Zip Top subsequently assigned the ’890 Patent to LGI-ZIP TOP LLC on April 10, 2024 and recorded that assignment with the USPTO five days later. Appx5503; Appx5507.

**B. Legal Standard**

A party seeking relief in a federal court must have standing, which has two components: constitutional standing and statutory standing. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019). Constitutional standing requires “an injury which can be fairly traced to the defendant and likely redressed by a favorable judgment” and is jurisdictional. *Id.* Statutory standing is a question of whether a party is authorized by statute to sue but is not jurisdictional. *Id.* at 1235-36 (recognizing the Supreme Court’s implicit overruling of Federal Circuit precedent). In other words, imperfect statutory standing is curable. *Id.* at 1236.

**C. Zip Top Has Standing and the Motion to Dismiss Should Be Denied**

SCJ’s motion to dismiss should be denied because Zip Top had constitutional and statutory standing when it filed its notice of appeal.

Zip Top's standing before the district court is not in dispute. SCJ only challenges Zip Top's standing post judgment. Resp. Br. 2 (addressing "standing to file or maintain the present *appeal*" (emphasis added)). Indeed, the district court satisfied itself of Zip Top's standing found that Zip Top was assigned the '890 Patent and sought infringement damages from of SCJ. Appx2. SCJ did not cross-appeal to challenge this finding and has not presented any evidence challenging Zip Top's standing at the time of the district court judgment. The only question for this Court is whether Zip Top's assignment of the '890 Patent "in April 2024" somehow robbed Zip Top of standing. It did not.

Zip Top had standing when it filed its notice of appeal. Zip Top was still the owner of the patent on April 4, 2024 and did not assign the '890 Patent to LGI-ZIP TOP LLC until April 10, 2024. *Compare* Appx5503(USPTO Assignment record) *with* Appx5500 (Notice of Appeal); *see also* Appx5505, Appx5514 (assignment). Thus, on and before April 4, 2024, Zip Top had both constitutional and statutory standing to maintain a civil action and to file this appeal. *See Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("the owner of a patent or the owner's assignee" has standing in federal court).

Further, Zip Top's constitutional standing is unaffected by its April 10, 2024 assignment of patent ownership because its injury already occurred (and continued through April 10, 2024 as infringement continued). Any other standing issue can be

cured. Because neither the Federal Rules of Appellate Procedure nor this Court's rules contemplate joinder of a party after the notice of appeal, Zip Top suggests any issue should be cured when jurisdiction is returned to the district court. However, should the Court determine statutory standing must be addressed during the pendency of this appeal, Zip Top stands ready to file an appropriate motion to substitute parties.

## III. SCJ FAILED TO SHOW THE DISTRICT COURT CORRECTLY CONSTRUED "SPOUT"

The District Court construed "spout" differently than either of the parties had proposed and got it wrong in the process.

### A. The District Court Incorrectly Construed "Spout" Must Not Include Zipper Members

SCJ argues the district court did not include negative limitations in its construction of "spout," and merely adopted the parties' proposed plain and ordinary meaning—"a distinct feature that directs liquid from and facilitates the pouring of fluid from a container." Resp. Br. 24. However, the district court expressly ordered: "The Court does not construe the term 'spout' to include the zipper members, which are a separate element of the invention." Appx12. The district court's construction is improper because it excludes the preferred embodiments illustrated by Figures 5A-5C of the '890 Patent.

First, SCJ argues the district court's construction of "spout" correctly treats the zipper members as separate elements and not "part of the spout" because the plain meaning requires the spout to be a "distinct feature" of the container. Resp. Br. 36-37. However, a "spout" is a "distinct feature" even if it includes portions of the zipper members and satisfies the agreed plain and ordinary meaning—"a distinct feature that directs liquid from and facilitates the pouring of fluid from a container." Figures 5A-5C of the '890 Patent show "spouts 53" are part of the "distinct features that direct liquid from and facilitate the pouring of fluid from the container." "When open, the **mouth 52** forms a **spout 53** at each tip 59." Appx50, 8:42-43.







FIG. 5B

Appx39-Appx40 (annotated). Figure 5A shows V-shaped **spouts 53** at the corners of the **mouth 52**, and Figure 5B indicates the **spouts 53** include the V-shaped interior surfaces of the **male zipper member 57** and **female zipper member 58**, where they

"'cross over' each other at the tips 59." Appx50, 8:35-36. Thus, the preferred embodiments of Figures 5A-5C of the '890 Patent satisfy the "distinct feature" element of the plain and ordinary meaning of "spout."

Second, SCJ argues the district court's construction of "spout" comports with the intrinsic record because claims 1 and 9 both recite a container with two identified portions: (1) a 'container portion' with a mouth that has at least one spout, and (2) a 'zipper portion' with female and male zipper members. Resp. Br. 37. However, the claims and the specification specifically contemplate embodiments where portions of the zipper members overlap the "container portion" with the spout. The claims broadly cover and the specification discloses embodiments where:

(1) the mouth forms a spout by the interior sides above and below the zipper members—Figures 6A-6G and 7A-7D (Appx42-Appx46); and




(2) the mouth forms a spout by the interior sides above and below the zipper members **and** the zipper members where they "crossover" each other—Figures 5A & 5B and Figures 5A & 5C (Appx39-Appx41).




Thus, the intrinsic record does not require the "container portion" and the "zipper portion" to be completely separate structures without overlap.

Third, SCJ argues the district court's construction of "spout" comports with the intrinsic record because claim 1 requires that each zipper member must have an "end section proximate the at least one flexible spout" and claim 9 requires the zipper members must "terminate[] at" the spout. However, the district court failed to consider Claim 1 merely requires that "end sections" of the zipper members, not the entire zipper members, are "proximate" the at least one spout. The "end sections" of the zipper members are the very tips of the zipper members, which are "proximate" both the tops of the zipper members where they "cross over" and the interior sides above and below the zipper members.




Appx39 (cropped, annotated); Appx41 (cropped, annotated). Similarly, the district court incorrectly analyzed what claimed structures are required to "terminate at the

at least one flexible spout," according to Claim 9. The tips of the zipper members taper until they terminate at one or both parts of the "at least one flexible spout"—the tops of the zipper members where they "cross over" and/or the interior sides above and below the zipper members.




Appx39 (cropped, annotated); Appx41 (cropped, annotated). Claim 9 does not require the zipper members to terminate at the entire "flexible spout." It is sufficient to satisfy Claim 9 for the zipper members to terminate at any part of "the at least one flexible spout."

**B. Zip Top's Arguments Were Timely Raised and Correct**

Zip Top did not offer a "late-breaking proposal to supplement the agreed ordinary meaning of 'spout' with additional language" as alleged by SCJ. Resp. Br. 21. Instead, Zip Top timely responded to SCJ's arguments that the presence of cross-over zipper members should be excluded from the meaning of "spout." Appx8 (recognizing Zip Top sought a construction of 'spout' that included "spouts with 'cross-over' zipper members" and those without). Moreover, Zip Top's position is

correct because structural limitations need not be separate where the spout is merely an identifiable region of the container. Zip Top's additional arguments on appeal are made in Zip Top's first opportunity to address the district court's construction of the term to mean structure "above the zipper members." And Zip Top's positions are supported by citation to evidence, not merely annotations, by citing to the '890 Patent disclosure.

### 1. *Any Presumption of Separate Structural Limitations Is Overcome*

SCJ cites *Kyocera Senco Indus. Toos Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1382 (Fed. Cir. 2022) for the proposition that, "components recited separately in a claim, like the spout and zipper members here, are presumed to be distinct components of the patented invention." Resp. Br. 30-31. However, SCJ extends *Kyocera* and the case upon which it relies, *Becton, Dickinson & Co. v. Tyco Healthcare Fr., LP*, 616 F.3d 1249 (Fed. Cir. 2010), too far because those cases had claim language that made a different interpretation improper and "render the asserted claims nonsensical." *See Little Giant Ladder Systems, LLC v. Tricam Industries, Inc.*, 2022 WL 2287048, *17-18 (D. Minn. 2022). The present case is distinguishable for three reasons. First, the "spout" and "zipper members" are sub-components of the "container portion" and the "zipper portion," and *Kyocera* does not speak to sub-components. SCJ has not cited a case, and Zip Top cannot find a case, where a presumption of separate elements applies to sub-components. Second, the claim

language of the present case does not make a different interpretation improper or "render the asserted claims nonsensical" as noted in the above discussion regarding "proximate" and "terminate." Third, the specification overcomes any presumption where the preferred embodiments of Figures 5A-5C of the '890 Patent expressly illustrate portions of the male and female zipper members overlapping with the interior sides above and below the zipper members to comprise a spout. *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231-32 (Fed. Cir. 2011) (specification cuts against two claimed elements being wholly separate structures).

SCJ argues, patentee disavowed the preferred embodiments of Figures 5A-5C by claiming the spout and zipper members are separate elements, and cites *Kyocera*, 22 F.4th at 1382-83. Resp. Br. 33-34. However, as shown above, the *Kyocera* presumption is clearly overcome. Further, a claim construction that excludes a preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996); *see also CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1381 (Fed. Cir. 2022) (rejecting construction of "a security system processor being different than the mobile device processor" that excludes a preferred embodiment—"the mobile security system . . . may be incorporated within the mobile device"); *Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F.3d 1367, 1379 (Fed. Cir. 2014) (rejecting construction of "message validation information" that excludes

preferred CHECKSUM embodiment). SCJ has failed to cite "highly persuasive evidentiary support" for the claims excluding the preferred embodiments of Figures 5A-5C.

### 2. *The District Court First Raised Its "Spout Above the Zipper Members" Interpretation in Its Order*

While neither Zip Top nor SCJ had argued the spout is limited to the interior sides of the mouth above the zipper members, the district court raised for the first time in its order its interpretation that, "the 'spout' at 53 is separate from and ***above the 'zipper members' at 57 and 58***." Appx11 (emphasis added). SCJ argues, "Zip Top misleadingly suggests that meant the district court incorrectly assumed 'each embodiment depicted in the patent' likewise showed spouts entirely above the zipper members." Resp. Br. 32. The district court's words are clear.

> According to the specification, ***it is the 'mouth,' not the 'zipper members,' that 'forms' the 'spout***.' (''890 Patent at col. 8 ll. 42-43.) **<u>Each embodiment depicted in the patent</u>**, including the embodiment depicted in Figures 5A, 5B, and 5C, includes ***a distinct, approximately V-shaped or 'liplike'*** (Pl.'s LR 56.1 Resp. ¶ 20) ***feature at each tip***, separate from the zipper members, ***that resembles what anyone would***

***call the spout*** of a pitcher or like container, and it is shaped as if to facilitate pouring in the same manner.

* * *

For these drawings [Figs. 5A-5C], the specification defines reference numeral 52 as the 'mouth,' numeral 53 as the 'spout' at the tips when the 'mouth' is open, and numerals 57 and 58 as the 'zipper members.' (*Id*. at col. 7 l. 48, col. 8 ll. 22-23, 43.) When Figures 5B and 5C are compared with Figure 5A***, it is clear that the 'spout' at 53 is separate from and above the 'zipper members' at 57 and 58***, although it may appear otherwise from a cross-sectional top view.




FIG. 5A




FIG. 5B

FIG. 5C

Appx9-10 (emphasis added). In response to the District Court, Zip Top has shown the district court's interpretation is incorrect because the '890 Patent specification teaches the "spout" extends both above and below the zipper members. Op. Br. 19-28 (citing patent specification and figures).

SCJ now argues, "[r]egardless of whether any drawing showed a spout extending above *and below* the zipper members, that would have no bearing on whether those features were *separate*." Resp. Br. 33. What SCJ ignores is that the '890 Patent teaches with reference to Figure 5B, "[w]hen open, the **mouth 52** forms a **spout 53** at each tip 59" (Appx50, 8:42-43) in the context of Figure 5A, which shows the other portions of the **spout 53** above and below the **female zipper member 58** and the **male zipper member 57**.







FIG. 5B

Appx39-Appx40 (annotated). Thus, the **"at least one flexible spout" 53** includes portions of the sides above and below the zipper members extending from the lip down into the mouth, as shown in Figure 5A, ***and also includes*** the zipper member interior surfaces where "the zipper members 57 and 58 'cross over' each other at the tips 59," as shown in Figure 5B.

### 3. *Zip Top Cited the '890 Patent, Not Just Annotations*

SCJ argues Zip Top's "coloring-book" annotations are not evidence and Zip Top has not cited evidence to show "Figures 5A or 5C demonstrates that the spout 53 includes the tops of the zipper members." Resp. Br. 34-35. In response, with reference to Figures 5A-5C, the '890 Patent teaches, "the zipper members 57 and 58 'cross over' each other at the tips 59 so that the male and female zipper elements completely engage at the tips 59, even when the mouth 52 of the tumbler 50 is open as shown in FIG. 5B. . . . When open, the mouth 52 forms a spout 53 at each tip 59." Appx50, 8:35-43; Appx39.



FIG. 5A



FIG. 5B



FIG. 5C

Appx40-41, Figs. 5A-5C. The ’890 Patent itself proves the spouts include the interior surfaces of the zipper member end portions.

## IV. THE DISTRICT COURT DISREGARDED ZIP TOP’S EVIDENCE OF “SPOUT”

Contrary to SCJ’s argument, Zip Top did not forfeit any infringement theory because it has consistently asserted only one infringement theory: that the V-shaped corner of the mouth of the Accused Product satisfies the claimed “spout.” The district court improperly granted summary judgment of non-infringement by disregarding Zip Top’s summary judgment evidence, which included physical and documentary evidence. The physical samples clearly show the V-shaped corner forming a spout. And the documentary evidence clearly shows the V-shaped corner facilitating the flow of water into a concentrated stream rather than a disbursed sheet of water as would be expected when pouring from an open mouth of a container.

### A. Zip Top Did Not Forfeit an Infringement Theory Because Zip Top Has Consistently Asserted Only One Infringement Theory

From its initial infringement contentions until the present, Zip Top has identified only two portions of the SCJ Endurable container as corresponding to the claimed “at least one flexible spout,” the V-shaped structure at each corner of the mouth. Zip Top’s infringement theory is undisputed because SCJ offered DSOF 45, and Zip Top admitted its truthfulness.

**DSOF 45.** In its Initial Infringement Contentions, Zip Top identified the features of the Endurables™ containers marked in red in the image below as allegedly practicing the asserted "spout" limitation of the '890 patent. Dryden Ex. 5 at B2.




Appx523; Appx4071. The SCJ Endurable container is marked with "red" annotations to show two "spouts," one at each corner of the mouth, wherein each "spout" extends from the lip of the mouth above the zipper members to the throat of the mouth below the zipper members. Zip Top identified portions of the first and second interior sides being part of the "spout," as shown. Appx523; Appx4071. Further, Zip Top identified the female end section of the female zipper member being proximate the "at least one flexible spout," which again identified portions of the first and second interior sides above and below the zipper members being part of the "spout."

| | |
|---|---|
| at least one **female end section** proximate the **at least one flexible spout** and comprising two end flanges extending from the first interior side of the mouth to define an end channel between the two end flanges, |  |



Appx4112. Similarly, Zip Top identified the male end section of the male zipper member being proximate the "at least one flexible spout," which yet again identified portions of the first and second interior sides above and below the zipper members being part of the "spout."

| | |
|---|---|
| at least one male end section proximate the at least one flexible spout comprising an end trunk, | When the container comes out of the mold, the structure corresponding to the claimed "end trunk" is the tapered end of the male zipper member. The container is not materially changed by a subsequent process because: (1) the tapered end of the male zipper member continues to be an "end trunk;" and (2) the tapered end of the gelled silicone added to the container after it comes out of the mold extends the male zipper member and is also an "end trunk." |




Appx4114-15.

SCJ then argued noninfringement asserting, "[d]uring development of the Endurables™ containers, SCJ experienced issues with the containers leaking liquid from the end regions of the container, caused by the zipper members not properly sealing in these regions. To address these issues, 'we applied 'leakage prevention material' [silicone] to the zipper members at each end to permanently engage the end portions of the zipper members."




Appx528-529, DSOF 56. In its opening summary judgment motion, SCJ argued, "[i]n SCJ's products, contrary to the patent, the zipper members are not merely 'engaged' where Plaintiff (incorrectly) claims there is a spout—*they are actually bonded together with silicone*. DSOF56-57. To the extent liquid can be removed from the container via that location at all, this can only be achieved by having the liquid 'flow[] over either of the male and female zipper members' (and the user's hands)—flatly contradicting the patent's description of a 'spout.' DSOF 68, 17-19." Appx490.

In response, Zip Top confirmed its infringement contention that "[c]laim elements [1C] and [9D] are infringed by the Accused Product, which has a container portion defining a mouth, wherein the mouth has at least one flexible spout and first and second interior sides opposite each other. ECF No. 48, Ex. 15 and 16."





Appx4033-34. Zip Top further explained, "bonding does not avoid infringement because the 'cross over' spouts of Figures 5B and 5C also remain engaged." Appx4025. "'Permanently engaged' zipper members of the Accused Product 'remain engaged' even when the mouth is open, just like the 'cross over' spout embodiment of Figures 5B of the '890 Patent. Compare DSOF 56 (annotated) and ECF No. 48-1, '890 Patent, 3:56-58 and Figure 5B (annotated)."




Appx4026. Zip Top marked the Accused Product with "red" annotations to show two "spouts," one at each corner of the mouth, wherein each "spout" extends from the lip of the mouth above the zipper members to the throat of the mouth below the

zipper members, which includes the interior surfaces of the zipper members where they cross over. Thus, Zip Top's infringement theory did not change.

### B. The District Court Disregarded Infringement Evidence

SCJ argues, the district court fully considered the physical exhibits, *i.e.*, samples of the accused products, and "the district court concluded after examining the same physical samples, there is no 'distinct feature that can be fairly described as directing liquid from the container and facilitating the pouring of fluid from it." Resp. Br. 51. In particular, SCJ argues the district court came to this conclusion, "regardless of whether the alleged spout is formed via the zipper members crossing over, BlueBr47, or whether it is instead asserted as 'a portion of the mouth' below or above those zipper members, BlueBr38." Resp. Br. 51.

However, the physical samples clearly have "a distinct, approximately V-shaped or 'liplike' (Pl.'s LR 56.1 Resp. ¶ 20) feature at each tip, separate from the zipper members, that resembles what anyone would call the spout of a pitcher or like container, and it is shaped as if to facilitate pouring in the same manner." Appx10. The district court described "each embodiment depicted in the patent, including the embodiment depicted in Figures 5A, 5B, and 5C" as having this feature. Notwithstanding, the district court disregarded the physical samples, and determined they do not have this feature.

The District Court's identification of a feature "that resembles what anyone would call the spout" may be illustrated for each embodiment as follows:







FIG. 6B






FIG. 6F

Appx42-Appx44, Figures 6A, 6B, 6F, and 6G (annotated to show District Court's identification of "spout" feature).



FIG. 7B

Appx45-Appx46, Figures 7A and 7B (annotated to show District Court's identification of "spout" feature).



FIG. 5B


FIG. 5C

Appx39-Appx41, Figures 5A, 5B, and 5C (annotated to show District Court's identification of "spout" feature).

The physical sample evidence of the Accused Products clearly show they have the same "distinct, approximately V-shaped or 'liplike' (Pl.'s LR 56.1 Resp. ¶ 20) feature at each tip, separate from the zipper members, that resembles what anyone would call the spout of a pitcher or like container, and it is shaped as if to facilitate pouring in the same manner." Appx10. The Accused Product has a portion of the mouth that extends from the lip of the mouth down to the zipper members.





*See* Appx5203; Appx5204. These above-zipper member portions of the mouth are clearly within the portions identified by Zip Top as corresponding to the claimed "at least one flexible spout," which extend from the lip of the mouth down to the throat of the mouth.







Appx4033-34; Appx523; Appx4071; Appx4112-4115. The only reasonable conclusion is that the district court disregarded the physical sample evidence, which clearly shows the Accused Products have structure corresponding to the claimed "at least one flexible spout," under every construction considered.

SCJ next argues the district court considered photographic evidence of water being poured from the accused products in a concentrated stream of water that is visibly facilitated by the V-shaped corner of the mouth of the container. Appx4203 ¶5; Appx4212-15.


















Appx4203 ¶5; Appx4212-15. SCJ argues these photographs only purport to establish "the ability to pour liquid from a container," which "does not demonstrate the presence of a 'spout' as required by the '890 claims." Resp. Br. 52. SCJ further

argues the district court correctly found, "the fact that one can pour fluid out of a Ziploc Endurables container does not mean that any part of the container over which the fluid passes is a spout; one can pour fluid out of any open container, no matter how it is shaped or designed, regardless of whether it has a spout." Appx13; Resp. Br. 52.

However, the district court disregarded that the photographic evidence shows fluid flowing out of **the V-shaped corner of the mouth**, not "any part of the container over which the fluid passes." And the photographic evidence shows the flow of water out of the V-shaped corner is directed into a concentrated stream. The district court disregarded that this photographic evidence shows the V-shaped corner of the mouth is a "distinct feature" that is the "distinct, approximately V-shaped or 'liplike' (Pl.'s LR 56.1 Resp. ¶ 20) feature at each tip, separate from the zipper members, that resembles what anyone would call the spout of a pitcher or like container, and it is shaped as if to facilitate pouring in the same manner." Appx10. Further, the disregarded photographic evidence shows the V-shaped corner of the mouth is a "distinct feature that directs liquid from and facilitates the pouring of fluid from a container." The V-shaped corner of the mouth is clearly shown directing liquid from the container into a concentrated stream rather than a dispersed sheet of water one would expect when pouring from the side of a wide-open mouth of a container. Appx4203 ¶5, Appx4212-15. The V-shaped corner of the mouth is clearly

shown facilitating the pouring of fluid from the container. Appx4203 ¶5, Appx4212-15. The district court disregarded this photographic evidence.

SCJ argues color annotations are not evidence, but rather attorney argument. Resp. Br. 53. However, color-coded annotations point out features that exist in the actual evidence being annotated, such as: the ’890 Patent (Appx25-53), the physical samples of the accused products (Appx5203-04), and photographic evidence of liquid being poured out of the container (Appx4203 ¶5, Appx4212-4215). The district court disregarded all of this actual evidence, whether annotated or not. In any event, this Court reviews the district court’s grant of summary judgment of non-infringement without deference. *O2 Micro Int’l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006).

## V. ZIP TOP IS ENTITLED TO SUMMARY JUDGMENT OF INFRINGEMENT

For the reasons detailed above, the district court’s ruling of summary judgment in favor of SCJ should be reversed and summary judgment should be granted in favor of Zip Top. SCJ cites several proposed facts as “affirmative support for SCJ’s position,” but fails to show how any of these proposed facts raise a genuine issue of fact concerning the structure or function of the Accused Products. The district court confirmed, “this dispute concerns the interpretation of the claim, not any material facts regarding the accused product, so ‘the question of literal

infringement collapses into claim construction and is amendable to summary judgment.'" Appx13 (citation omitted). Further, the proposed facts do not show noninfringement of the "at least one flexible spout" limitation of the claims of the '890 Patent. SCJ cites two proposed facts, which are addressed as follows.

### A. "Additional Evidence" of Bonded Zipper Ends Fails to Raise a Genuine Issue of Fact and Does Not Show Noninfringement

SCJ argues it "offered evidence that its Endurables products were intentionally designed to prevent (rather than facilitate) liquid flow by using silicone to bond the zipper ends. See Appx3891-94." Resp. Br. 46. SCJ does not explain how any of the cited evidence raises a genuine issue of fact. It is noted the cited evidence is a declaration of Jose Porchia, an SCJ employee, who states that the application of "leakage prevention material" [silicone] to permanently engage the end portions of the zipper members "obstructs the opening of the container and obstructs the flow of liquid out of each container end." Appx3892. Zip Top does not dispute SCJ's proposed fact that 'we applied 'leakage prevention material' [silicone] to the zipper members at each end to permanently engage the end portions of the zipper members."




Appx528-529, DSOF 56. Thus, there is no genuine issue of material fact concerning the silicone bonded zipper ends.

Further, "additional evidence" of the zipper ends being bonded with silicone proves the Accused Products infringe the "at least one flexible spout" limitations of the '890 Patent because they are nearly identical to the preferred embodiments of Figures 5A-5C.




Figure 5A illustrates an open tumbler without showing male or female zipper members, and Figures 5B and 5C show cross-sectional top views of the open tumbler, "wherein male and female zipper members 57 and 58 are shown." Appx50, 8:23-23, 8:45-46. Figures 5B and 5C of the '890 Patent

illustrate two separate and different "cross over" spout embodiments. *Compare* Appx50, 8:21-23 *with* Appx50, 8:44-46.

Regarding the Figure 5B "cross over" spout embodiment, it forms a portion of the **spout 53** where **male zipper member 57** and the **female zipper member 58** engage, even when the mouth 52 is open. Appx50, 8:35-38; Appx40. "FIG. 5B shows a top view of the tumbler of FIG. 5A, wherein the zipper members cross over and remain engaged at the spouts." Appx48, 3:56-58; Appx40.




FIG. 5B FIG. 5B

Appx40 (annotated).

> FIG. 5B is a cross-sectional top view of the tumbler shown in FIG. 5A, wherein **male** and **female** zipper members **57** and **58** are shown. The **male zipper member 57** is positioned just inside the mouth 52 and extends from one interior side of the tumbler 50. The **female zipper member 58** is positioned just inside the mouth 52 and extends from the other side of the tumbler 50. In this embodiment, the tumbler 50 has relatively thick tips 59 at opposite ends of the mouth 52, wherein each tip 59 form an interior wall transverse to the axis of the mouth 52. The exterior surfaces of tips 59 provide "handles" for a user to hold the tumbler 50 while closing the zipper members **57** and **58** together. The zipper members terminate at the interior walls of the tips 59 to

> completely seal the mouth 52 of the tumbler 50 when closed. ***The zipper members 57 and 58 "cross over" each other at the tips 59 so that the male and female zipper elements completely engage at the tips 59, even when the mouth 52 of the tumbler 50 is open as shown in FIG. 5B.*** To close the mouth 52, a user simply squeezes the sides of the mouth 52 together and pinches the zipper members **57** and **58** together until the **male** and **female** zipper members **57** and **58** are completely engaged from tip 59 to tip 59. ***When open, the mouth 52 forms a spout 53 at each tip 59.***

Appx50, 8:21-43 (emphasis added). Figure 5A identifies interior sides of the mouth above and below the zipper members comprise portions of the **spout 53** and Figure 5B identifies another portion of the **spout 53** where the **male zipper member 57** and the **female zipper member 58** "cross over." Appx40 (annotated).







FIG. 5B

Regarding the Figure 5C "cross over" spout embodiment, it forms a portion of the **spout 53** where **male zipper member 57** and the **female zipper member 58** engage, even when the mouth 52 is open. Appx50, 8:57-59; Appx41. "FIG. 5C

shows a top view of the tumbler of FIG. 5A, wherein the zipper members cross over and remain engaged at the spouts." Appx48, 3:59-61; Appx41.

> FIG. 5C is a cross-sectional top view of an alternative tumbler 50 shown in FIG. 5A, wherein **male** and **female** zipper members **57** and **58** are shown. Similar to the embodiment shown in FIG. 5B, the male zipper member 57 is positioned just inside the mouth 52 and extends from one interior side of the tumbler 50 and the female zipper member 58 is positioned just inside the mouth 52 and extends from the other side of the tumbler 50. However, in this embodiment, the tips 59, formed at each end of the mouth 52, have relatively thin wall thicknesses and each tip 59 does not form an interior wall transverse to the axis of the mouth 52. The wall thicknesses in the region of the tip 59 is approximately the same as the side walls forming the mouth 52. ***The male and female zipper members 57 and 58 extend all the way to the most extreme ends of the tips 59 and "cross over" each other at the tips 59.*** The ends of the zipper members **57** and **58** are angled at about 45 degrees, so that when the zipper members **57** and **58** are closed together, they seal the zipper at the tips 59.



FIG. 5C

Appx50, 8:44-62 (emphasis added). Figure 5A identifies interior sides of the mouth above and below the zipper members comprise portions of the **spout 53** and Figure 5C identifies a portion of a **spout 53** where the **male zipper member 57** and the **female zipper member 58** "cross over." Appx41 (annotated).

SCJ's Accused Product has the same "cross over" spouts. SCJ's Accused Product has interior sides of the mouth above and below the zipper members that comprise portions of the spout, and SCJ's Accused Product forms a **"cross over" spout** portion where the **male zipper member** and the **female zipper member** engage, even when the mouth is open. Appx5203; Appx5204. Thus, the "cross over" spouts of SCJ's Accused Product infringe the "at least one flexible spout" of the Asserted Claims. Appx4024; Appx40 (annotated); *see also* Appx482.













Thus, the "additional evidence" cited by SCJ confirms the Accused Products infringe the "at least one flexible spout" limitations of the '890 Patent.

### B. "Additional Evidence" of Cool Grab Tabs Fails to Raise a Genuine Issue of Fact and Does Not Show Noninfrigement

SCJ argues "this bonding alongside the Cool Grab Tabs impedes (rather than facilitates) the flow of liquid from the container. Appx3905; *see also* Appx3931-32, Appx3934-35, Appx3943-46 (Osswald Decl.); Appx4253-57 (Osswald Reply Decl.)." Resp. Br. 46. SCJ does not explain how any of the cited evidence raises a genuine issue of fact. It is noted the cited evidence is a declaration of Tim S. Osswald, Ph.D., an SCJ expert witness, who states, "the Endurables™ containers are molded with tabs that extend outward from the container sides and opening, called Cool Grab Tabs™ . . . designed for users to grip while holding or transporting the container . . . and that, during manufacturing, the tabs are molded as one piece in a solid block." Appx3932 (citations omitted). Zip Top does not dispute SCJ's proposed fact that the Endurables™ containers are molded with Cool Grab Tabs™. Thus, there is no genuine issue of material fact concerning the Cool Grab Tabs™.

SCJ's use of "Cool Grab Tabs" does not avoid infringement because the '890 Patent expressly teaches to use "Cool Grab Tabs"—the only difference is that the '890 Patent calls them "handles." In the embodiment shown in Figure 5B, "the tumbler 50 has relatively thick **tips 59** at opposite ends of the mouth 52, wherein . . . the exterior surfaces of **tips 59** provide "**handles**" for a user to hold the tumbler 50 while closing the zipper members 57 and 58 together." Appx48, 3:56-58 and Appx40, Fig. 5B.



FIG. 5B







The "**Cool Grab Tabs**" of SCJ's Accused Product are the same as the "**handles**" illustrated in Figure 5B of the '890 Patent. *Compare* Appx528-529, DSOF 56 (annotated); Appx40, Fig. 5B (annotated); Appx5203; Appx5204; Appx531, DSOF 69; and Appx50, 8:30-31. Thus, SCJ's use of "**Cool Grab Tabs**" or "**handles**" does not

excuse infringement of the "at least one flexible spout" of the claims, which is illustrated in Figure 5B of the '890 Patent.

The "Cool Grab Tabs" simply do not prevent operation of the spout or otherwise obstruct the flow of liquid out of the spout. Rather, a user may hold SCJ's Accused Product by the "Cool Grab Tabs" and easily pour fluid out of the container through the spout and over the "Cool Grab Tab." Appx4203, at ¶5 and Appx4212-15; Appx4088, PSOF9; Appx4281-83 (Resp. to PSOF9).






Thus, the "additional evidence" cited by SCJ confirms the Accused Products infringe the "at least one flexible spout" limitations of the '890 Patent.

### C. SCJ Has Not Disputed Additional Claim Elements

SCJ argues it specifically challenged at least Zip Top's elements [1C], [9D], [1F], [1J], [9F], and [9G]. Resp. Br. 47. However, as SCJ admits, it disputed these elements only as to their recitation of "the spout in relation to separate features of the claims, including the 'mouth' ([1C][9D]), the 'female end section' [1F], and 'the

male end section' [1J]." Resp. Br. 47. SCJ has only disputed these elements to the extent they recite the "at least one flexible spout." SCJ has not disputed that the Accused Products have a "mouth," a "female end section," or a "male end section." Thus, SCJ's dispute as to these claim elements rises and falls with its dispute of the "at least one flexible spout."

### D. The Accused Products Infringe the "Mixing/Molding" Limitation

Zip Top offered evidence sufficient to prove the mixing/molding limitation. SCJ does not dispute "the packaging of the Accused Products states, 'PLATINUM SILICONE Reusable, food grade silicone.' ECF No. 48, Exs. 15 and 16." Appx4287; Appx5203; Appx5204. Further, SCJ has not disputed the '890 Patent's explanation that food-grade silicone products were historically made with "methyl-vinyl-polysiloxane obtained by a process of cross-linking with platinum." Appx47, 1:26-27. The patent incorporates by reference the disclosure of U.S. Patent No. 6,197,359 (the '359 Patent) for this discussion. Appx47, 1:22. The '359 Patent specification (incorporated by reference into the '890 Patent) explains that "silicone is obtained by a cross-linking process with platinum" to speed the cross-linking reaction. Appx5199, 3:35–4:1. The '359 Patent specification (incorporated by reference into the '890 Patent) also explains "the use of platinum as a catalyst of the polymerization process does not generate decomposition by-products." Appx5199, 4:1–3. SCJ's admission that the Accused Products are made using "PLATINUM SILICONE

Reusable, food grade silicone," in the context of the molding process description of the '890 Patent proves the Accused Products infringe the mixing/molding limitations. Thus, the summary judgment record evidence is sufficient to prove SCJ infringes the mixing/molding limitations.

## VI. CONCLUSION

SCJ's motion to dismiss should be denied because Zip Top had constitutional and statutory standing when it filed its notice of appeal.

The district court erred by narrowly construing "spout" to exclude the preferred embodiments of Figures 5B and 5C and granted summary judgment of non-infringement based on that erroneous construction. The district court further erred by failing to consider Zip Top's additional evidence of infringement, including evidence of a spout extending above and below the zipper elements. On either or both bases, this Court should reverse the summary judgment.

In addition, Zip Top cross-moved for summary judgment of infringement based on physical evidence, documentary evidence, and a clear explanation of how each element is infringed. Because SCJ failed to raise a genuine issue of material fact, this Court should render judgment of infringement.

In the alternative, this Court should remand for narrow fact finding on the "spout" and/or the mixing/molding element only.

Dated: August 28, 2024

/s/ *R. William Beard, Jr.*
R. William Beard, Jr.
Counsel for Appellant Zip Top, Inc.

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1161

**Short Case Caption:** Zip Top, Inc. v. SC Johnson & Son Incorporated

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,706 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 08/28/2024

Signature: /s/R. William Beard, Jr.

Name: R. William Beard, Jr.

Save for Filing