NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ZIP TOP, INC.,**
*Plaintiff-Appellant*

**v.**

**SC JOHNSON & SON INCORPORATED,**
*Defendant-Appellee*

---

2024-1661

---

Appeal from the United States District Court for the Northern District of Illinois in No. 1:22-cv-05028, Judge Jorge L. Alonso.

---

Decided: December 30, 2025

---

BRIAN C. BANNER, Slayden Grubert Beard PLLC, Austin, TX, argued for plaintiff-appellant. Also represented by ROBERT WILLIAM BEARD, JR., TRUMAN FENTON.

ANDREW DUFRESNE, Perkins Coie LLP, Madison, WI, argued for defendant-appellee. Also represented by RODGER K. CARREYN, CHRISTOPHER GRAYDON WAYNE HANEWICZ, AUTUMN N. NERO; TARA LAUREN KURTIS, Chicago, IL.

Before Moore, *Chief Judge*, Taranto, *Circuit Judge*, and Chun, *District Judge*.[1]

Chun, *District Judge*.

**I**

ZipTop, Inc. (ZT) appeals a decision from the Northern District of Illinois granting summary judgment of noninfringement in favor of SC Johnson & Son Inc. (SCJ). *Zip Top, Inc. v. S.C. Johnson & Son, Inc.*, No. 22-C-5208, 2024 WL 989380 (N.D. Ill. Mar. 7, 2024). ZT maintains that SCJ's Ziploc® Endurables™ products (the Accused Products) infringe United States Patent No. 11,383,890. The '890 patent discloses a process for making a container from molded silicone. The Accused Products are reusable silicone containers.

SCJ's primary noninfringement theory is that the Accused Products do not include a "spout." Before the district court, the Parties agreed that the spout claim element is properly construed as a "distinct feature that directs liquids from and facilitates the pouring of fluid from a container." *See* J.A. 4019; J.A. 8. But ZT objects to another limitation imposed by the district court: "the zipper members are not the spout or part of it; rather, the spout is a separate feature." ZT Opening Br. at 17; *see* J.A. 12. Based on its construction of the spout element, the lower court ultimately found the Accused Products do not include this feature and it granted summary judgment of noninfringement in favor of SCJ. J.A. 12–13, 18.

---

[1] Honorable John H. Chun, District Judge, United States District Court for the Western District of Washinton, sitting by designation.

We now review the construction of the claims in the ’890 patent and determine whether the properly construed claims map to the Accused Products.[2]

## II

### A

The ’890 patent discloses a method for making silicon cups, bowls, and tumblers. ’890 patent col. 2, lines 55–58. The parties dispute the construction of Claim 1 and Claim 9. *See* J.A. 487–89; 4019–21. Claim 1 recites:

---

[2] SCJ raised the issue of whether we have jurisdiction to consider this appeal, SCJ Response Br. at 2–4, because after the district court issued its order, ZT “sold its entire business, including the ’890 patent, to LGI-Zip Top LLC, which is a wholly owned subsidiary of Let’s Gel, Inc.” ZT Opening Br. at 4. But our jurisdiction attached when the notice of appeal was filed. *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App’x 890, 893 (Fed. Cir. 2019). When ZT filed the notice of appeal, it owned the ’890 patent. J.A 5500, 5503. Six days later, it assigned the ’890 patent to LGI-ZIP TOP LLC. J.A. 5505. This transfer of patent rights does not defeat the Court’s jurisdiction. *Uniloc*, 772 F. App’x at 893. Even so, at oral argument, counsel for ZT made an oral motion to join LGI-ZIP TOP LLC, and Let’s Gel, Inc. as appellants. *See* Oral Arg. at 7:05–7:50, available at https://www.cafc.uscourts.gov/oral-arguments/24-1661_11052025.mp3. Because the proper parties should be before us, this motion is granted, and these parties will be bound by the Court’s decision. *See Martin v. Wilks*, 490 U.S. 755, 765 (1989) (“Joinder as a party . . . is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.”).

A silicone container making process, the process comprising:

placing a first mold in proximity with at least a second mold to define a mold cavity of sufficient size and shape to mold a unitary whole container;

mixing a base-forming material and a catalyst to make uncured silicone;

putting the uncured silicone into the mold cavity;

curing the uncured silicone by applying heat and pressure to the uncured silicone in the mold cavity until the silicone cures to form the unitary whole container comprising:

a container portion defining a mouth, wherein the mouth has at least one flexible spout and first and second interior sides opposite each other;

a zipper portion comprising:

a female zipper member extending from the first interior side of the mouth, the female zipper member comprising:

a female middle section comprising two middle flanges defining a middle channel between the two middle flanges, and

at least one female end section proximate the at least one flexible spout and comprising two end flanges extending from the first interior side of the mouth to define an end channel between the two end flanges,

wherein the two middle flanges extend farther from the first interior side of the mouth than the two end flanges;

a male zipper member extending from the second interior side of the mouth, wherein the female and male zipper members are positioned opposite each other so as to be

> engageable when closing the mouth, the male zipper member comprising:
>
> a male middle section comprising a middle trunk; and
>
> at least one male end section proximate the at least one flexible spout comprising an end trunk,
>
> wherein the middle trunk extends farther from the second interior side of the mouth than the end trunk;
>
> opening the first mold relative to the at least second mold; and
>
> removing the container from the mold cavity.

’890 patent col. 11, lines 17–61. Claim 9 recites,

> A silicone container making process, the process comprising:
>
> placing a first mold in proximity with at least a second mold to define a mold cavity of sufficient size and shape to mold a unitary whole container;
>
> mixing a base-forming material and a catalyst to make uncured silicone;
>
> putting the uncured silicone into the mold cavity;
>
> curing the uncured silicone, by applying heat and pressure to the uncured silicone in the mold cavity, to form the unitary whole container having a durometer of between 30 and 80 shore A and comprising:
>
> a container portion defining a mouth, wherein the mouth has at least one flexible spout and first and second interior sides opposite each other, wherein the first and second interior sides have thicknesses greater than 0.5 mm;

> a zipper portion comprising:
>
> a female zipper member extending from the first interior side of the mouth and tapering until it terminates at the at least one flexible spout; and
>
> a male zipper member extending from the second interior side of the mouth and tapering until it terminates at the at least one flexible spout;
>
> opening the first mold relative to the at least second mold; and
>
> removing the unitary whole container from the mold cavity.

*Id.* at col. 12, lines 34–61.

B

SCJ produces and sells the Accused Products, which are silicone storage containers. J.A. 481. Like the containers disclosed by the '890 patent, the Accused Products have a zipper mechanism at the top of the container. J.A. 482–83. The zipper on these products is bonded at the ends to prevent liquid leakage, and these bonded ends are called "Cool Grab Tabs." J.A. 482. SCJ contends that bonding the zipper ends obstructs the flow of liquid out of the container, and that SCJ does not instruct consumers to pour liquid from the Accused Products because doing so could be hazardous. *Id.*

ZT alleges that each of the '890 patent limitations map to the Accused Products. J.A. 4019–28. In particular, ZT contends that the Accused Products include the '890 patent's spout limitation. *Id.*

C

In the district court, the parties cross-moved for summary judgment on the issue of infringement. J.A. 2. SJC argued that a Person Having Ordinary Skill in the Art (POSA) would understand a spout to be "a distinct feature

that directs liquid from and facilitates the pouring of fluid from a container." J.A. 511. ZT did not dispute "this plain and ordinary meaning." J.A. 4019 n.1. Rather, ZT argued that this understanding of spout should extend to "cross over" spout embodiments too. J.A. 4020–21. Although the term "cross over" does not appear in the '890 patent, ZT argued that Figures 5B and 5C of the patent depict this structural feature. J.A. 4021. According to ZT, the male and female zippers in that embodiment "cross over at the spout location" and form a spout. *Id.*

In its motion, ZT identified two facts that it said show the existence of the spout limitation in the Accused Products: (1) "male and female zipper members of the SCJ Ziploc ENDURABLES containers 'cross over' each other at the tips so that the male and female zipper elements completely engage at the tips, even when the mouth of the container is open"; and (2) "A user may hold a Ziploc ENDURABLES container by the 'Cool Grab Tabs' and pour fluid out of the container over a 'Cool Grab Tab.'" J.A. 4087–88. SJC disputed these allegations and argued that, even if true, the Accused Products still do not contain a spout. J.A. 4279–83.

The district court granted SCJ's motion for summary judgment of noninfringement. J.A. 13. The court adopted the parties' agreed upon construction of the spout claim element. J.A. 9. But the district court rejected ZT's "cross over" spout argument, observing, "without any explanation or justification, [ZT] treats the cross-over zipper members mentioned in relation to the embodiment depicted in Figures 5A-5C of the '890 patent as *part of the spout*, rather than as separate elements of the patented invention, which happen to be *adjacent to the spout* in that embodiment." *Id.* After reviewing the claim language, drawings, written description, and entire specification, the court added that "whether the zipper members cross over, engage, or disengage at the spouts in an open configuration, the zipper

members are not the spout or part of it; rather, the spout is a separate feature." J.A. 12.

After it construed the spout claim element, the court compared the claims to the Accused Products. J.A. 12–13. In the court's view, the Accused Products did not have a "distinct feature that can be fairly described as directing liquid from the container and facilitating the pouring of fluid from it." J.A. 12. And the court further noted, "the fact that one *can* pour fluid out of a Ziploc Endurables container does not mean that any part of the container over which the fluid passes is a spout" because "one can pour fluid out of any open container, no matter how it is shaped or designed, regardless of whether it has a spout." J.A. 13. Finding there was no genuine dispute of material fact that the Accused Products did not contain a spout and the spout limitation is included in each of the asserted claims, the court granted SCJ's motion. *Id.*

## III

The Federal Circuit "reviews a grant of summary judgment under the law of the regional circuit," here, the Seventh Circuit. *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 714 (Fed. Cir. 2022). The Seventh Circuit conducts a de novo review and affirms summary judgment if, after viewing the evidence in the light most favorable to the non-movant, there is no genuine dispute of material fact. *See Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018).

Our review of summary judgment of noninfringement requires two steps. *See Abbott Lab'ys v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). The first step, claim construction, presents a question of law that is reviewed de novo. *Intel Corp. v. Qualcomm Inc.,* 21 F.4th 801, 808 (Fed. Cir. 2021). The second step, determination of whether the properly construed claims map to the accused device, is a question of fact. *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016). So "a grant of summary judgment

of noninfringement is proper when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Id.* (citing *PC Connector Sols., LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005)).

A

"It is elementary that claim construction begins with, and remains focused on, the language of the claims." *Biagro W. Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1302 (Fed. Cir. 2005). "Dictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have been used both by our court and the Supreme Court in claim interpretation." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1322 (Fed. Cir. 2005).

Before the district court, the parties agreed that the "spout" element in the '890 patent is properly understood to be a "distinct feature that directs liquid from and facilitates the pouring of fluid from a container." J.A. 8. ZT does not dispute this claim construction, nor can it. *See TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356, 1363 (Fed. Cir. 2017) ("[A] party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below.").

But ZT now contends that the district court erred when it imposed a negative limitation on the construction of the spout claim element. ZT Opening Br. at 16. The court said that it "does not construe the term 'spout' to include the zipper members, which are a separate element of the invention." J.A. 12; ZT Opening Br. at 16. ZT says that this limitation is flawed because the claim language includes no negative limitations, nor does it specify that any features are "separate." ZT Opening Br. at 16–17. Instead, ZT maintains "that the specification specifically contemplates embodiments where portions of the zipper members are present in the spout." *Id.* at 17. According to ZT, the district

court also incorrectly determined that the zipper members are adjacent to the spout, rather than part of it. *Id.* at 28. ZT likewise says that the patent's use of the phrase "comprising" when reciting elements of the zipper members illustrates that the container portion and zipper members are not wholly separate. *Id.* at 31.

But the language of the '890 patent does not support ZT's preferred construction of the spout claim element for three reasons. *First*, "the clear implication of the claim language" is that the zipper members and spout are "'distinct component[s]' of the patented invention" because Claim 1 and Claim 9 list those elements separately. *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004)). Claim 1 describes forming a unitary whole container comprised of two parts: (1) a container portion and (2) a zipper portion. '890 patent, col. 11, lines 27–29, 32. Claim 9 likewise describes forming a unitary whole container that is comprised of two parts: (1) a container portion and (2) a zipper portion. *Id.* col. 12, lines 44, 46, 51. In both Claim 1 and Claim 9, the spout is listed as an element of the mouth. *Id.* col. 11, line 30; col. 12, line 47. And in both Claim 1 and Claim 9, the mouth is an element of the container portion—not the zipper portion. *Id.* Thus, both Claim 1 and Claim 9 list the spout separate from the elements of the zipper portion, which include the zipper members. *Id.* col. 11, lines 32–58; col. 12, lines 51–57. ZT does not identify any contrary claim language or meaningfully rebut the implication that the spout and zipper members are distinct components because the patent lists those elements separately.

In addition, the language of the specification makes clear that the zipper members are separate from the spout. *See Phillips*, 415 F.3d at 1315 (noting the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.") (internal citation omitted).

The specification consistently refers to the spout, male zipper member, and female zipper member as different features. For instance, in one preferred embodiment, the specification discloses that "the male and female zipper members **67** and **68** do not interfere with the spout **63**." '890 patent, col. 10, lines 1–2. In another preferred embodiment, "[t]he male zipper member **77** is positioned just inside the mouth **72** and protrudes from one interior side of the tumbler **70** and extends from one spout **73** to the other spout **73**." *Id.* col. 10, lines 24–26. The specification also discloses that Figure 5—the preferred embodiment upon which ZT repeatedly relies—shows the zipper members are distinct from the spout:

> The male zipper member **57** is positioned just inside the mouth **52** and extends from one interior side of the tumbler **50.** The female zipper member **58** is positioned just inside the mouth **52** and extends from the other side of the tumbler. . . . When open, the mouth **52** forms a spout **53** at each tip **59**.

*Id.* col. 8, lines 23–43. Because the zipper members in this embodiment are located "just inside" the mouth, that indicates they are not part of the mouth. *Id.* And it is the mouth—not the zipper members—that forms the spout. *Id.* Thus, even in the embodiment that ZT most repeatedly relies on, the specification discloses that the zipper members and spout are separate features.

What is more, ZT's arguments about the '890 patent's use of the term "comprising" are unavailing. *See* ZT Opening Br. at 31–35. ZT says the '890 patent uses the term "comprising" to describe the zipper portion, and the "comprising" term "does not exclude the possible presence of addition[al] elements—part of the at least one spout." *Id.* at 32 (internal quotations omitted). It is undisputed that Claim 1 and Claim 9 use the term "comprising" to describe the zipper portion, and that the use of the phrase

"comprising" in claim language does not foreclose the existence of additional, unnamed components. *Id.* at 31; *cf. CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007) ("Correctly construed, 'comprised of' does not of itself exclude the possible presence of additional elements or steps."). Even so, it is irrelevant if unnamed components are also part of the zipper portion because the relevant question is whether the zipper portion is functionally part of the spout—not whether the spout is part of the zipper portion.

*Second*, ZT's proposed claim construction is illogical. Courts must "strive, where possible, to avoid nonsensical results in construing claim language." *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1276 (Fed. Cir. 2011) (citing *Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.,* 533 F.3d 1362, 1370 (Fed. Cir. 2008)). Claim 1 describes a zipper portion with "at least one female end section proximate the at least one flexible spout." '890 patent, col. 11, lines 39–40. Claim 9 similarly describes a zipper portion with a male or female zipper member that extends from the "interior side of the mouth and taper[s] until it terminates at the at least one flexible spout." *Id.* col. 12, lines 51–57. Overall, while this syntax is not perfectly precise, the language of Claim 1 illustrates that the zipper portion is one thing and the spout is another, "proximate" thing. *Id.* col. 11, lines 39–40. The language of Claim 9 also shows the zipper members are a separate feature from the spout because the zipper members "terminate at" the spout. *Id.* col. 12, lines 51–57. The zipper members cannot then be part of the spout. But ZT's proposed construction gives rise to a contradiction in which the spout would be "proximate" itself or "terminate at" itself.

Likewise, because ZT is bound to the claim construction position that it took before the district court, it does not dispute that spout means a "distinct feature that directs liquid from and facilitates the pouring of fluid from a container." J.A. 9. The ordinary meaning of "distinct" is

"not the same." *Distinct*, Merriam-Webster's Online Dictionary (11th ed. 2025), https://www.merriam-webster.com/dictionary/distinct. Likewise, a synonym of "distinct" is "separate." *Id.* Still, ZT says that "portions of the zipper members are present in the spout." ZT Opening Br. at 17. But the spout cannot be both "distinct"—i.e., not the same or separate—from the other features, including the zipper members, and also include the zipper members.[3]

*Third,* ZT repeatedly looks to the preferred embodiments, rather than the claim language, to support its claim construction arguments. But "[i]t is the claims, not the preferred embodiments, that define the metes and bounds of the patentee's invention." *IQRIS Techs. LLC v. Point Blank Enters., Inc.*, 130 F.4th 998, 1004 (Fed. Cir. 2025). Our precedent "is replete with examples of subject matter that is included in the specification, but is not claimed." *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) (collecting cases). And "the mere fact that there is an alternative embodiment disclosed in [a] patent that is not encompassed by [the] district court's claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence." *Id.* As discussed above, the claim language confirms that the zipper members and spout are separate features, even if—arguably—some embodiments appear to depict zipper members present in the spout. Between the claim language and the embodiments, the claim language controls. *See, e.g.*, *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("[T]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim.").

[3] This is similarly fatal to ZT's argument that the '890 patent does not specify that any features are "separate." *See* ZT Opening Br. at 16–17.

The district court properly relied on intrinsic evidence to support its conclusion that the spout does not include the zipper members. *See* J.A. 12 (reaching this conclusion "[b]ased on the claim language, the drawings, the written description, and the entire specification").

Accordingly, we affirm the district court's construction of the "spout" claim element in Claim 1 and Claim 9 of the '890 patent.

B

We next consider whether the district court erred in granting summary judgment of noninfringement. Following claim construction, we compare the properly construed claims with the allegedly infringing devices to determine whether the Accused Products literally infringe. *Medgraph, Inc.*, 843 F.3d at 949. "Literal infringement exists when every limitation recited in the claim is found in the accused device." *Akzo Nobel Coatings, Inc. v. Dow Chern. Co.*, 811 F.3d 1334, 1341 (Fed. Cir. 2016).

Claim construction aside, ZT maintains that the Accused Products infringe the '890 patent because the corners of the Accused Products satisfy the spout limitation. ZT Opening Br. at 35–61. Although SCJ says that ZT offers new infringement theories on appeal, SCJ Response Br. at 32–34, ZT maintains that it "has identified only two portions of the SCJ Endurable container as corresponding to the claimed 'at least one flexible spout,' the V-shaped structure at each corner of the mouth." ZT Reply Br. at 16. ZT says that the Accused Products have "a distinct, approximately V-shaped or 'liplike' . . . feature at each tip, separate from the zipper members, that resembles what anyone would call the spout of a pitcher or like container, and it is shaped as if to facilitate pouring in the same manner." *Id.* at 22–27. ZT also says its photographic evidence shows that the corners of the Accused Products facilitate fluid flowing out of the container into a concentrated stream. *Id.* at 28–29.

There is no genuine dispute of material fact that the Accused Products satisfy the ’890 patent’s spout limitation. Although the ends of the Accused Products’ zipper members might appear to come to a “V-shaped or liplike” end, ZT fails to explain how these end points are “distinct.” Instead, ZT supports its argument with colorfully annotated images that it says identify the purported spout on the Accused Products. But these images only undermine the conclusion that there is a feature of the Accused Products that facilitates pouring and is “distinguishable to the eye or mind as being discrete” or is “readily and unmistakably apprehended.” *Distinct*, Merriam-Webster’s Online Dictionary (11th ed. 2025), https://www.merriam-webster.com/dictionary/distinct. ZT provides no other evidence that shows the Accused Products have an identifiable spout. So there is no genuine dispute of material fact that any physical characteristic, indication, or other demarcation shows the Accused Products have a “distinct” spout.

ZT also contends that the photographic evidence it produced shows the corners of the Accused Products facilitate pouring. Yet this evidence simply shows that water can be poured from the corners of the Accused Products. There is no genuine dispute of material fact that “one can pour fluid out of any open container, no matter how it is shaped or designed, regardless of whether it has a spout.” J.A. 13. Nothing in these images suggests that pouring liquid from the Accused Products is made easier by the products’ corners.

Thus, even viewing the evidence in the light most favorable to ZT, the Accused Products do not satisfy the spout limitation in the ’890 patent. Because the Accused Products do not satisfy every limitation recited in the ’890 patent’s claims, we conclude that the district court did not err in granting SCJ summary judgment of noninfringement.

## VI

For all these reasons, we affirm the district court's grant of summary judgment of non-infringement with respect to the '890 patent.

**AFFIRMED**